COTTONWOOD COAL CO., RESPONDENT, *v.* JUNOD, STATE TREASURER, APPELLANT.

(No. 5,683.)

(Submitted April 24, 1925. Decided May 18, 1925.)

[236 Pac. 1080.]

*License Fees — Foreign Corporations — When Wholly "Engaged in Business" in State—Statutory Construction.*

Statutory Construction—Rules.
1. In construing a statute the intention of the legislature must be pursued, if possible, and the subject matter and objects which prompted and induced its enactment must be kept in mind.

License Fees — Foreign Corporations—"Engaged in Business" in State—Definition.
2. Chapter 79, Laws of 1917, as amended (secs. 2296–2299, Rev. Codes 1921), providing for a corporation license fee, allows certain deductions from the gross income of a corporation in determining its net income upon which the fee is to be computed, if "engaged in business" wholly in Montana. Plaintiff, a foreign corporation engaged in the business of coal mining in this state, maintained its general office in Minneapolis, where the meetings of the stockholders and directors were held and from where the business was directed, to which office moneys were sent for deposit and where it received interest and

[73 Mont. 392.]

dividends from invested funds and disbursed same to its stockholders. The state treasurer, claiming that the corporation by reason of the above facts was partly engaged in business in Montana and partly in Minnesota, and therefore subject to a higher fee, refused to allow the deductions. *Held*, in plaintiff's action to recover the excess fee paid under protest, that by doing the things done by the company at its general office in Minneapolis it was not "engaged in business" in the state of Minnesota within the meaning of Chapter 79, was therefore not partly engaged in business in this state and partly in Minnesota but wholly engaged in the business of coal mining in Montana, and hence entitled to the deductions claimed.

Statutes, 36 **Cyc.**, p. 1106, n. 29; p. 1110, n. 54; p. 1128, n. 55.
Taxation, **37 Cyc.**, p. 864, n. 39 New.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by the Cottonwood Coal Company against O. H. Junod, State Treasurer. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. L. A. Foot,* Attorney General, and *Mr. A. H. Angstman,* Assistant Attorney General, for Appellant, submitted a brief; *Mr. Angstman* argued the case orally.

A corporation is doing business where it maintains its organization, holds its directors' and stockholders' meetings, and maintains headquarters from which its business plans are formulated and directed, even though its legal domicile is elsewhere and all its operating property is elsewhere. (*Stegall* v. *American Pigment & Chemical Co.,* 150 Mo. App. 251, 130 S. W. 144; *Marconi Wireless Tel. Co. of America* v. *Commonwealth,* 218 Mass. 558, Ann. Cas. 1916C, 214, 106 N. E. 310; *Cheney Bros. Co.* v. *Commonwealth,* 246 U. S. 147, 155, 62 L. Ed. 632, 38 Sup. Ct. Rep. 295 [see, also, Rose's U. S. Notes, Supp.]; *Bullfrog Goldfield R. Co.* v. *Jordan,* 174 Cal. 342, 163 Pac. 40; *People* v. *Horn Silver Min. Co.,* 105 N. Y. 76, 11 N. E. 155; *People ex rel. Chicago Junction Rys. & U. Stockyards Co.* v. *Roberts,* 154 N. Y. 1, 47 N. E. 974; *People ex rel. Union Sulphur Co.* v. *Glynn,* 125 App. Div. 328, 109 N. Y. Supp. 868; *Chemung Iron Co.* v. *Lynch,* 269 Fed. 368; *Von*

*Baumbach* v. *Sargent Land Co.*, 242 U. S. 503, 61 L. Ed. 460, 467, 37 Sup. Ct. Rep. 201 [see, also, Rose's U. S. Notes Supp.].)

*Mr. I. Parker Veazey, Jr., Mr. W. L. Clift* and *Mr. R. H. Glover,* for Respondent, submitted a brief; *Mr. Veazey* argued the cause orally.

MR. JUSTICE STARK delivered the opinion of the court.

Chapter 79 of the Session Laws of the Fifteenth Legislative Assembly (page 120) is entitled: "An Act to license certain corporations for the exclusive use and benefit of the state of Montana, fixing the license fee for engaging in business and providing a method of collecting such license fee," *etc.*

The first part of section 1 of this Act deals with domestic corporations, and then, in treating of foreign corporations, provides: "Every corporation except as hereinafter provided, organized and existing under the laws of any other state or country, or the United States, and engaged in business in the state of Montana, shall annually pay for the exclusive use and benefit of the state of Montana a license fee for carrying on its business in the state of Montana of one per centum upon the total net income received by such corporation in the preceding fiscal year from all sources within the state of Montana, including the interest on bonds, notes or other interest bearing obligations of residents, corporate or otherwise, and including the income derived from dividends on capital stock or from net earnings of resident corporations * * * whose net income is taxable under this title. * * * "

Section 2 of this Act, as amended by Chapter 69 of the Session Laws of the Sixteenth Legislative Assembly (page 137), provides the method of determining the total net income of corporations engaged in business wholly within the

state of Montana by allowing certain specified deductions from its gross income; and section 3 of the Act, as amended by the Session Laws of the Sixteenth Legislative Assembly, provides the method of ascertaining the net income of corporations engaged partly in business within this state and partly within any other state, by allowing certain deductions from the gross amount of its income received from all sources within this state.

Section 4 of the Act requires every corporation subject to its provisions to render a true and accurate return of its annual net income each year to the state treasurer, in order to enable him to determine and assess the amount of the license fee required to be paid by such corporations.

Chapter 79, *supra,* as amended in 1919 and further amended in 1921, now appears as sections 2296 to 2299, inclusive, of the Revised Codes of 1921.

The plaintiff is a corporation organized and existing under the laws of the state of Minnesota, with its principal place of business at the city of St. Paul, for the general business of mining coal or other minerals, and doing whatever is necessary or proper in connection therewith, and is duly qualified to do business in this state.

This action was originally instituted against J. W. Walker, who was state treasurer at the time the controversy arose, and continued to act as such until about the month of May, 1923, when he was succeeded in that office by O. H. Junod, who was thereafter, by amendment of the complaint, substituted as defendant in place and stead of Walker.

The plaintiff was engaged in business in Montana during the year 1920, and in due course rendered a return to the state treasurer as required by section 4 of Chapter 79, in which it claimed as deductions from its gross income certain items allowable under section 2 of the Act to corporations engaged in business wholly within the state of Montana. The treasurer, claiming that the plaintiff was engaged in

business partly within this state and partly within the state of Minnesota, and therefore subject to the provisions of section 3 of the Act, refused to allow the deductions claimed by plaintiff in its return, and demanded payment of the amount which would have been due if only the deductions allowed by section 3' were made. The amount so demanded by the state treasurer was $300.15 more than would have been due from the plaintiff, had the computation been made under the provisions of section 2. The plaintiff paid the whole amount demanded by the treasurer, but made payment of the $300.15 under protest, and within the time allowed by law brought this action to recover said amount.

The complaint sets out the foregoing facts in detail, and, in addition thereto, alleges that it is engaged in the business of mining coal wholly within the state of Montana, where its plants and mines for the mining of coal are located, and that all of its mines and plants are located wholly within this state. It is further alleged: "That a majority of the directors and officers of the plaintiff corporation at all of the times herein mentioned were, and now are, residing in the state of Minnesota; that all of the meetings of the stockholders, and of the board of directors, of the plaintiff corporation, have been held in the state of Minnesota; that at all of the times herein mentioned, and now, the plaintiff corporation uses an office in the city of St. Paul, Minnesota, equipped with desks and furniture, all of which is owned by the Great Northern Railway Company; that at all of the times herein mentioned some of the business plans and policies of the plaintiff corporation have been formulated at its principal office in St. Paul, Minnesota, and that the business of the plaintiff corporation carried on by it in the state of Montana is, and at all times herein mentioned has been, partially supervised and directed through its main office in St. Paul, Minnesota; that some of the financial affairs of the plaintiff corporation at all of the times herein mentioned were

handled and managed by the plaintiff corporation at its head office in St. Paul, Minnesota, and some of the proceeds derived from the business of the plaintiff corporation in the state of Montana during the times herein mentioned were sent to the main office of the plaintiff company at St. Paul, Minnesota, and deposited in certain banks in St. Paul, Minnesota, to the credit of the plaintiff company, from which disbursements were made from time to time for the expenses in operating its business in the state of Montana; that during the year 1920 plaintiff received in the city of St. Paul, Minnesota, interest on Liberty bonds and bank balances owned by it in banks in the city of St. Paul, Minnesota, amounting to $2,596.06, no part of which was returned by the plaintiff as income of the plaintiff in computing the license tax in question, and that the defendant above named, by reason of the foregoing facts, adjudged that plaintiff was a corporation doing business partly outside of the state of Montana, and that it was therefore not entitled to the deductions specified in section 3 [2?] of said Act."

To this complaint defendant filed a general demurrer, which was overruled. The defendant having elected to stand on his demurrer, judgment was rendered and entered against him, and from this judgment he has appealed.

From the foregoing statement it is apparent that the only question for determination on this appeal is whether the plaintiff during the year 1920 was "engaged in business" partly within the state of Minnesota, within the contemplation of Chapter 79, *supra*.

If by doing the acts detailed in the complaint as having been performed by the plaintiff in the state of Minnesota, it was "engaged in business" in that state within the purview of the statute under consideration, then the judgment of the lower court was erroneous and should be reversed.

In the construction of statutes the intention of the legis[1] lature is to be pursued, if possible (sec. 10520, Rev.

Codes. 1921), and they must be construed in reference to the subject matter and the objects which prompted and induced their enactment. (*Joplin Supply Co.* v. *West,* 149 Mo. App. 78, 130 S. W. 156; Lewis' Sutherland on Statutory Construction, sec. 368.) The intent of the legislature in [2] enacting Chapter 79, *supra,* and the objects which prompted its enactment, are not at all in doubt. They were to require the payment of an annual license fee by certain corporations of the class to which plaintiff belongs for the privilege of engaging in business in this state, which fee was fixed at one per cent of the total net annual income received during each fiscal year from all sources within this state, and to definitely prescribe the method of determining this net annual income.

The meaning of the expression "engaged in business" must be determined from the connection in which it is used, and in the light of the object sought to be obtained by the enactment of the statute in which it is found. A vast number of cases can be found in which the meaning of this expression has been defined under varying statutes. Counsel for respondent have cited some of these cases, but the statutes involved therein differ from the one we have under consideration to such an extent that we do not deem these definitions or descriptions applicable to the statute here involved.

This statute fixed as the measure of the license fee to be exacted from all corporations for the privilege of carrying on business in this state one per cent of their net income derived from the business carried on in this state, whether engaged in business wholly in this state, or partly in this state and partly in another, and the sole purpose of sections 2 and 3 is to point out the method of determining this net income. Beyond that determination, so far as this statute is concerned, the state has no interest in the business of the corporation. If the business is strictly Montana business, the net income is ascertained by deducting the expenses and

other statutory allowances from all the gross income, since the gross income of the business or occupation of the corporation is thus necessarily a Montana gross income; and if the gross income is derived from the business done in Montana and from business done in another state, then all of the corporation's gross income is not used in computing the license fee, but only the gross income derived from the part of the corporation's business wholly carried on in this state. And as only the Montana gross income is used, so also the Montana expenses will be allowed to be deducted from this gross income, to reach the net income contemplated in the statute.

From this it appears that, when the statute uses the expression "engaged in business," whether in this state or elsewhere, it is speaking in terms of profit and loss, and does not refer to mere corporate action, such as holding meetings of the board of directors, doing clerical work of bookkeeping, formulating the plans and policies, or performing other corporate acts, which do not in and of themselves result in the production of income, but does contemplate some kind of business the conduct of which results in an income—some gainful occupation of the corporation. This purpose and intent is manifest all through the various provisions of the statute.

Necessarily a corporation must do certain acts with reference to its corporate activity at the state in which it is incorporated. Usually it must maintain an office, keep certain records, and hold annual meetings of its stockholders therein. Doing these things implies that it is carrying on business to some extent in such state, but by doing them it is not "engaged in business" there, within the purview of the statute, which uses the word "business" solely in connection with its gainful pursuit, and as a means of determining its net income as the basis of fixing a license fee. In the statute under consideration the activity of the corporation is not made the

measure of the license fee, except as such activity manifests itself in the production of income.

But it is urged on behalf of defendant, by sending money for deposit in banks in St. Paul, receiving interest on its bank balances and interest on Liberty bonds, and disbursing these funds in that city, the plaintiff was "engaged in business" within the state of Minnesota.

In the case of *Equitable Life Assur. Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062, it was pointed out that Chapter 79, *supra,* followed almost *verbatim* the federal Corporation Tax Law. (Act Aug. 5, 1909, sec. 38, 36 Stat., c. 6, pp. 11 and 112 to 117.) The meaning of the expression "engaged in business" as used in the federal Act has been announced in at least two cases which have been called to our attention. (*Zonne* v. *Minneapolis Syndicate,* 220 U. S. 187, 55 L. Ed. 428, 31 Sup. Ct. Rep. 361; *McCoach* v. *Minehill & Schuylkill Haven R. Co.,* 228 U. S. 295, 57 L. Ed. 842, 33 Sup. Ct. Rep. 419 [see, also, Rose's U. S. Notes].) In each of these cases it was held that the mere receipt of interest and dividends from invested funds, bank balances and the like, and the disbursement thereof amongst the stockholders of a corporation, amount to no more than receiving the ordinary fruits that arise from the ownership of property, and do not amount to being "engaged in business," within the contemplation of the federal Corporation Tax Law. We think those decisions are of controlling effect upon the facts involved in this case, and that the trial court did not err in overruling the defendant's demurrer to the plaintiff's complaint.

The judgment is affirmed.

*[Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and MATTHEWS concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, takes no part in the foregoing decision.