STATE, RESPONDENT, *v.* J. C. MAGUIRE CONSTRUCTION CO. ET AL., APPELLANTS.

(No. 8,206.)

(Submitted October 8, 1941. Decided December 4, 1941. Resubmitted January 21, 1942. Final Decision filed May 7, 1942.)

[125 Pac. (2d) 433.]

326

*Mr. R. F. Gaines,* for Appellants, submitted an original and a reply brief and argued the cause orally.

*Mr. John W. Bonner,* Attorney General, and *Mr. I. W. Choate,* Counsel for the State Board of Equalization, submitted an original and a reply brief; *Mr. Choate* argued the cause orally.

*Mr. J. M. Stotesbury,* amicus curiae, submitted a brief and argued the cause orally.

MR. JUSTICE ANDERSON delivered the opinion of the court.

The question presented for determination by this appeal is whether a corporation which, after paying its corporation license tax within the given year, computed upon the preceding year's income, has become dissolved within that year and has ceased altogether to transact business, can be subjected to an excise tax computed on its business operations during such

year, under the provisions of the Montana statutes relating to excise taxes.

The judgment appealed from was rendered on motion for judgment on the pleadings, and the facts of the case, which are not in dispute, are as follows: J. C. Maguire Construction Company, the appellant, was a Delaware corporation which qualified to do business in the state of Montana and commenced doing business here in April, 1934. It continued doing business in the state until December 6, 1937, when the corporation was dissolved. The business was conducted at a profit with a substantial net income each year. The corporation paid the Montana corporation franchise tax in 1935, 1936 and 1937, computed each year upon the net income from its business transacted in the state during the preceding year. After its discontinuance of business the state of Montana demanded that it pay a corporation tax computed upon the business transacted between January 1, 1937, and December 6, 1937, the date of cessation of business. The corporation refused to make this payment, contending that the tax already paid in 1937, computed upon its net income from the business transacted in 1936, constituted the corporation franchise tax for 1937, which having been paid, its obligation to the state under the franchise tax law had been fully met. The state contends that the tax payment made in 1937, computed upon the corporation's 1936 income was a 1936 tax and did not cover the year 1937, and that for the period from January 1, 1937, to December 6, 1937, the corporation still owed a tax to be computed upon the net income derived from its business transacted in the state during that period.

The authority for the imposition of such tax is found in section 1, Article XII, of the Montana Constitution which says that the legislative assembly shall provide the necessary revenue for the support and maintenance of the state by taxation of property and that "the legislative assembly may also impose a license tax, both upon persons and upon corporations doing business in the state." The first enactment of a law for the

imposition of a general corporation franchise tax was in 1917, Chapter 79 of the Laws enacted by the legislative assembly and which went into effect on March 3 of that year. There have been amendments which have changed the rate of the tax, with additional provisions for administration of the law and the enforcement of collection. There has been no amendment which has changed the purpose of the law since the original enactment in 1917. The law in codified form is embodied in Chapter 205 of the Revised Codes of 1935. There was a later amendment in 1937, increasing the rate of computation to 3% upon the net income.

The law, as originally enacted, was construed by this court in the case of *Equitable Life Assurance Co.* v. *Hart,* 55 Mont. 76, 173 Pac. 1062, as a revenue measure imposing an excise tax upon the privilege of doing business in the state in a corporate capacity. Reference is therein made to the earlier case of *Northwestern Mutual Life Ins. Co.* v. *Lewis and Clark County,* 28 Mont. 484, 72 Pac. 982, 98 Am. St. Rep. 572, wherein a similar law, applicable only to insurance companies, was considered and construed as a revenue measure imposing a tax upon the privilege of carrying on business as distinguished from a license fee exacted upon the granting of such privilege. The *Flint Case,* decided by the United States Supreme Court (*Flint* v. *Stone Tracy Co.,* 220 U. S. 107, 31 S. Ct. 342, 55 L. Ed. 389, Ann. Cas. 1912B, 1312), is therein also referred to as placing the same construction upon a similar enactment by Congress.

In all later decisions of this court wherein this tax has been under consideration or has been referred to in any way it has been spoken of as a franchise tax, or license tax, an excise upon the privilege of doing business in the state in a corporate capacity. (*Cottonwood Coal Company* v. *Junod,* 73 Mont. 392, at page 398, 236 Pac. 1080; *East Helena State Bank* v. *Rogers,* 73 Mont. 210, at page 213, 236 Pac. 1090; *O'Connell* v. *State Board of Equalization,* 95 Mont. 91, at page 118, 25 Pac. (2d) 114.) It has been clearly distinguished from the license fees exacted upon the grant of privilege and from taxes imposed

upon income or property. With the history of judicial interpretation of the Act as we have it thus harmonized with other tax measures, and the administration of the law in accordance therewith, the question of the character of the tax is so well settled as to leave no room for doubt or speculation.

The original Act, Chapter 79, Laws of 1917, provides that: "Every corporation except as hereinafter provided organized and existing under the laws of the State of Montana and engaged in business therein, shall annually pay to the State Treasurer, as a license fee for carrying on business in said State of Montana, one per centum upon the total net income received by such corporation in the preceding fiscal year from all sources within the State of Montana, * * * and every corporation except as hereinafter provided, organized and existing under the laws of any other state or country, or the United States, and engaged in business in the State of Montana, shall annually pay for the exclusive use and benefit of the State of Montana a license fee for carrying on its business in the State of Montana of one per centum upon the total net income received by such corporation in the preceding fiscal year from all sources within the State of Montana, * * *." (Section 1.) And further provides that: "The license fee shall be computed upon the total net income of the corporation received within each preceding calendar year ending December 31st, * * *" or other fiscal year. (Section 4.) And it further provides that: "Every corporation, subject to the license fee herein imposed, shall for the year ending on the 31st day of December, or for its fiscal year selected under the provisions hereof, in each year hereafter, beginning with the year 1917, render a true and accurate return of its annual net income in the manner and form to be prescribed by the State Treasurer with the approval of the State Board of Equalization and containing such facts, data and information as are appropriate and in the opinion of the State Treasurer necessary to determine the correctness of the net income returned and to carry out the provisions of this Act. For the purpose of fixing the license

fee to be paid *for the year 1917* every corporation subject to the license fee herein imposed shall make the required return as to its annual net income for the year 1916 on or before the first day of May, 1917. The return * * * shall be filed with the State Treasurer on or before the first day of March in each year except the year 1917, when it shall be filed on or before the first day of May. * * *'' (Section 4.) ''All assessments shall be made by the State Treasurer and the several corporations shall be notified of the amounts for which they are respectively liable on or before the first day of June of each successive year and said assessments shall be paid on or before the 15th day of June, provided that every corporation computing its license fee upon the income of the fiscal year which it may designate in the manner hereinbefore provided shall pay the fee due under its assessment within thirty days after the date upon which it is required to file its list or return of income for assessment.'' (Section 5.)

The controversy here is as to the period of business activity ▮ covered by the tax required to be paid in each year. The language of the Act is clear and there can be no question of what was intended by the legislature. It provides that every corporation shall annually pay a license fee for carrying on business in the state, the amount of which is determined by taking a percentage of the preceding year's income as the measure. Special provision is made for collection of the tax "for the year 1917," the year of the enactment of the law, and a return of the corporation's annual net income for the year 1916 is required to be made as the basis for determination of the amount. And then it is provided that in each succeeding year thereafter the tax to be paid for the year shall be computed upon the preceding year's net income. Thus we see that the legislature has fixed a basis for determination of the amount, with a formula to be followed in the computation and assessment of the tax, in language commanding that it shall be so done. The language is so clear and so specific that there can be no misunderstanding of its meaning. The result is

that every corporation, domestic or foreign, doing business in the state is required each year to pay a tax for the privilege of doing business that year, the amount of which is fixed at a per centum of the amount of the net income received by the corporation during the preceding year from all Montana sources. The tax is imposed upon the privilege of doing business and not upon the income derived from the business done.

In imposing such a tax the legislature may fix upon any reasonable basis of determination of the amount to be paid, within constitutional limitations. (Fletcher on Corporations, secs. 6953 and 6956; 4 Cooley on Taxation, Fourth Ed., sec. 790.) Here the legislature has fixed upon the value of the franchise privilege as the basis for the tax, and has taken the income received by the corporation from all Montana sources the preceding year as the measure of such value. Where there has been income in the business during the year preceding it is fair to assume that there will be like income during the year of payment, and, whether it should so transpire, the measure so adopted for determination of the value of the franchise privilege is fair and reasonable as between the state and the corporation and as working out a tax basis proportionate in amount as between all corporations affected.

In the circumstances of the enactment of this law, to become operative immediately upon enactment, and with the provisions therein for the method of determining the amount of the tax the first year, any attempt to construe the law as meaning that the tax required to be paid covers the privilege of doing business the preceding year would make the law retroactive. While retroactive legislation is permitted under the Constitution the fundamental rule of construction is that retroactive effect is not to be given to a statute unless commanded by its context, terms, or manifest purpose. (*Falligan v. School District*, 54 Mont. 177, 169 Pac. 803.) This rule is especially applicable to legislative enactment providing for a tax of this nature where the subject of taxation is the exercise of a privilege. A tax paid under this law in 1917, imposed

upon the exercise of the corporate privilege in 1916 would be ·reaching back into a period anterior to the enactment of the law. Such construction of the statute would be contrary to the well established rule.

A similar tax law in the state of Rhode Island has been construed by the Supreme Court of that state as intended to operate prospectively, and as meaning that the tax assessed is for the year of assessment. (*Jennings* v. *United States Bobbin & Shuttle Co.*, 44 R. I. 388, 117 Atl. 647, 648.) There the tax Act was passed in January, 1912, requiring every corporation doing business for profit in the state to pay, on July first of each year, a tax on what was called its "corporate excess." For the purpose of ascertaining the value of the "corporate excess" the corporation was required to file with the Tax Board, on March first, a report of its financial condition on December thirty-first preceding, which was required to be used as a basis for the assessment of the tax. In the *Jennings Case* the corporation had dissolved on December 31, 1919, and thereafter transacted no business other than to pay outstanding indebtedness and distribute a liquidating dividend among the stockholders. The State Tax Board assessed a tax against the corporation in June, 1920, based on the corporation's financial report as of December 31, 1919, contending that the tax assessment which the law provided for was for the period of the preceding year, and that the assessment and payment followed the year for which it was assessed. The court took the other view, and said in its opinion:

"There is nothing in the Tax Act to show that it was intended by the Legislature to have a retrospective effect. * * * The fact that the corporation is required to make a return to the state board before March 1 in each year, showing certain financial facts as of December 31 next preceding, for the purpose of assisting the board in the determination of the value of the stock of such corporation, and to determine the amount of the corporate excess, and assess a tax thereon June

1, does not cause the tax assessed June 1 to be due for the year ending December 31 next preceding. * * *

"The court is of the opinion that, as the corporate excess tax assessed June 1, 1912, was for the year 1912, the annual corporate excess tax assessed thereafter was for the year in which the tax was assessed * * *."

The same construction was given a similar tax law in the state of Kentucky, (*Greene* v. *Frankfort Distillery Co.*, 209 Ky. 427, 273 S. W. 28, 29). The law was enacted in 1906, and, as administered, the first tax was assessed in 1907 for payment that year. The court held the tax paid in 1907 was for that year, and not for the preceding year upon the business of which it was computed. The court says that "It is hard to believe the Legislature intended such provisions to apply to privileges already enjoyed, especially where, as here, a criminal liability is attached to a failure to comply therewith, which was clearly beyond its power in so far as concerned business done in 1906 prior to the effective date of the law." It was held that a tax assessed and paid in 1917 computed on business transactions and financial status of the corporation the preceding year, was for the year 1917.

In Nebraska such a tax has been held to cover the year of payment though computed on the preceding year's business. (*State ex rel. Smrha* v. *General American Life Ins. Co.*, 132 Neb. 520, 272 N. W. 555.)

The state of New York has a corporation franchise tax law under which the amount of the tax is determined with reference to business transactions and stock issue status of the corporation of a period preceding the time of assessment and payment. That law, however, does not contain the specific provision, as in our law, for the first year's tax to be computed upon a period antedating the time of its enactment. There were varying views as to the period covered by the tax payment, as appears from the numerous court decisions upon the subject. The law was finally construed as meaning that the tax paid was for the period preceding payment. Thereafter

the law was amended by a provision that the tax should be paid in advance. Under the amended law the tax was held to cover a period of time following payment although computed upon business transactions and business status of the corporation for a period preceding. (*People ex rel. New York, etc., Co.* v. *Gaus,* 200 N. Y. 328, 93 N. E. 988; *New York* v. *Jersawit,* 263 U. S. 493, 44 S. Ct. 167, 68 L. Ed. 405.)

The effect of the language of our statute is that the tax is required to be paid in advance of the expiration of the period taxed, just as much as if the requirement had been stated in the language employed in the amendment of the New York law.

There are decisions construing similar tax laws of other states as meaning that the tax is for the year preceding the year of payment. The decision is such in the case of *Slater Mills, Inc.,* v. *Gilpatric,* 97 Conn. 521, 117 Atl. 806. The decision in that case, however, does not deal with the situation confronting us in the instant case, where the legislature has devised a scheme of taxation and a method of collection that makes the tax payable during the annual period for which the payment is exacted.

In California where the tax has been held to be for the year preceding payment, the court there has said that "Payment of the tax may precede the exercise of the privilege or it may follow it, depending upon what system the Legislature chooses to provide." (*Carpenter* v. *Peoples Mut. Life Ins. Co.,* 10 Cal. (2d) 299, 74 Pac. (2d) 508, 510.)

In a New York case, decided in 1913 under a statute then in force which provided for the payment of such a tax annually on June first, computed upon the business of the calendar year preceding, it was held to be for the preceding year. The court says: "The law in question does not state for what year the tax is imposed. The only statement is that there must be an annual tax paid, to be measured by the receipts of the previous year." (*People* v. *Metropolitan Surety Co.,* 158 App. Div. 647, 144 N. Y. Supp. 201, 202.)

Our statute is specific in fixing the year of payment as the

year for which the tax is imposed. It says that "for the purpose of fixing the license fee to be paid *for the year 1917* every corporation subject to the license fee herein imposed shall make the required return as to its annual net income for the year 1916," for determination of the amount of the tax, and thereafter in each succeeding year the tax to be likewise computed upon the previous year's income.

In 1923, in amending certain administrative provisions of the law, the section relating to the determination of the amount of the tax to be paid for each year was re-enacted and restated in the exact language as in the original Act, but changing the designated years of 1917 and 1916 to 1923 and 1922. As re-enacted this section states that "for the purpose of fixing the license fee to be paid *for the year 1923,* every corporation, subject to the license fee herein imposed, shall make the required return as to its annual net income for the year 1922 on or before the first day of May, 1923." (Chapter 146 of the Laws of 1923, Rev. Codes 1935, sec. 2299.) So here we have again, six years after the law first was enacted, a second expression of legislative intent that the tax imposed is for the year of its payment.

The provisions for the imposition and collection of the tax contained in the original Act, and as above quoted, have been retained in all re-enactments and amendments of the law, in the exact language as quoted, except that the tax rate has been changed.

In 1933 much of the law was rewritten, with additional provision made for administration and enforcement. No change was made in the provision imposing the tax nor in the basis and manner of assessment. As before, it provides that each year the tax assessment shall be made, based upon the corporation's net income of the year preceding. There was provision made for collection of the tax in case of merger or consolidation of corporations and in case of corporations dissolving or ceasing to do business in the state.

In case of merger or consolidation, past earnings of the

corporation which has merged or become consolidated with another, and which have not been used in the computation of any tax, are added to the amount used in computation of the future tax of the corporation continuing the business. For the purpose of such inclusion of income returns the amendment says that the continuing corporation "shall also include in its own next annual return, in addition to its own entire net income of corporations whose assets it acquired, or which were merged or consolidated, as shall not have been used or included in *measuring* a corporation excise tax to this state, and shall be taxed upon such combined entire net income *for the year to ensue.*" (Sec. 6, Chapter 166, Laws of 1933, sec. 2303.2, R. C. 1935.)

In respect to corporations which become dissolved or cease ██ to transact business there is the following provision (sec. 7, Chapter 166, Laws of 1933, sec. 2303.3, Rev. Codes 1935), and therein, the state board contends, is found the provision and authority for collection of the tax item sought to be recovered in this case: "Every corporation which shall be dissolved or cease to do business in this state during any tax paying year, shall make its return and pay the tax due, for such period as it transacted business, on or before the date of such dissolution or cessation of business. The state board of equalization may grant a reasonable extension of time for filing a return upon good cause shown therefor."

We are unable to see, in this amendment, any provision for ██ the collection of any tax item other than as already provided for in the law before the amendment was made. All it says is that when a corporation is dissolved or ceases to do business it must, on or before its dissolution or cessation of business, pay the tax due for such period as it transacted business. The only purpose we can see in this enactment is that a corporation shall not be permitted to pass out of existence or into a state of business inactivity without paying to the state any item of franchise tax which it may then owe. No new tax item is provided for and we must look to the other

parts of the law by which the tax is imposed in determining what tax item may be due. Here the Maguire Construction Company has already, in 1937, paid in full the tax for that entire year. True, it was computed upon the preceding year's income but that was taken only as the measure of the tax. The amount computed as owing was the tax imposed upon the privilege of doing business for the calendar year of 1937. This having been paid, and there being no provision for any other tax item under this law, the Maguire Construction Company owed no tax at the time of its dissolution and there was no occasion for invoking the provisions of section 2303.3, Revised Codes.

Had the dissolution occurred earlier in the year before tax paying time, or had the company failed to pay the 1937 tax as imposed, then the provisions of this amendment would be operative.

Reference in the amendment to the "tax paying year" does not give ground for any different construction. If the expression is to be given any special significance as used, and as referring to any certain time as distinguished from some other, the most that we can see in such purpose of the use of the expression is that it refers to the time from January 1 and until the tax imposed for the year is paid. It refers to a time when there is a tax liability which has not been paid.

If the legislature had any thought of collecting an item of this tax computed upon the income of the corporation's last year in business, the purpose has not been expressed. To give that effect to the amendment we would have to read into it language which is not there, or find implications for which there is no basis in the language used, nor in the provisions of the law as a whole. We cannot give effect to supposed unexpressed intentions, merely to find a basis for a certain construction of a legislative Act.

Nor can we, on the basis of this amendment, say that the legislature thereby changed the whole scheme devised for the

imposition of this tax, making it payable after the exercise of the privilege taxed.

The record shows that the Maguire Construction Company paid no tax in 1934, the year it commenced business in the state. Its income of that year was used as the measure of the tax imposed in 1935. In 1936 and again in 1937 a tax was imposed in each instance, computed upon the preceding year's income and which was paid. Thus it will be seen that the company was free from taxation upon the franchise privilege exercised during the nine months of business activity the first year and, for the period of less than a year of franchise privilege exercised the last year, it paid a tax computed upon a whole year's income. This is a result inescapable under the law as it is, which cannot be avoided by resort to judicial construction. The 1937 year's income could not have been employed in computation of any tax unless the corporation had been carrying on business in the state in 1938, in which event it would then have served as the measure of the tax for that year, under the present law.

This case has been twice argued before this court. A rehearing was granted after a unanimous decision sustaining the tax board. Three opinions were written, all reaching the same result, but expressing different views and different line of reasoning in reaching the result. After rehearing, further careful study of the question has been made, from which we see that in reaching the conclusion as we did, certain positive language in the law was not given the controlling effect clearly intended by the legislature and weight was given to implications for which there is no real ground. It is now clear to us that the conclusion so reached is incorrect and it is ordered that the opinion so rendered be withdrawn and this opinion substituted.

The judgment of the lower court is reversed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ERICKSON and ANGSTMAN concur.

Mr. Justice Morris:

I dissent. At the time the various things occurred that are involved in this controversy, the defendant corporation was operating under the authority of the laws of the state of Delaware and was authorized to do business in Montana April 6, 1934. It ceased to do business in Montana October 6, 1937, and on the following December 6th filed with the Secretary of State of the State of Montana documents evidencing the fact that its corporate existence had been voluntarily terminated in the state of Delaware. It failed to make any return of its income for that year. The State Board of Equalization of the State of Montana, by virtue of the provisions of section 2303.3 of Chapter 205, Revised Codes, demanded that the defendant make such return. The defendant complied with the demand under protest, but refused to pay the tax levied by the board upon such return. This action followed. The amount of the tax as levied, with interest, penalty and costs was recovered by the state in the action in the district court, and the defendants appealed.

The defendants' only contention is that the tax paid in 1937 entitled the corporation to carry on its business in the state for that year. When defendants began business in Montana in 1934 they were granted a license for which they paid nothing, and when at the close of business for the fiscal year of 1934 the corporation's books showed a net profit it was taxed on such net income and that tax was the consideration it paid for doing business in 1934. The tax could not be levied and collected until the following year for the simple reason that its net income could not be determined in advance; hence the license was issued for the current year and the tax was levied and collected in the following year; the net income being the basis of the levy.

This corporation license tax, in all its material provisions, is very similar to the Individual Income Tax Act, Chapter 204 of the Political Code, and likewise very similar to the Express Companies' License Tax, Chapter 206; the Sleeping Car License

Tax, Chapter 207; the Coal Mines License Tax, Chapter 208; the Coal Retailers' License Tax, Chapter 209; the Electrical Energy Producers' License Tax, Chapter 210; the Metalliferous Mines License Tax, Chapter 211; the Telegraph License Tax, Chapter 212; the Cement Producers' License Tax, Chapter 213; the Cement Dealers' License Tax, Chapter 214; the Carbon Black Producers' License Tax, Chapter 215; the Gasoline License Tax, Chapter 216; the Oil Producers' License Tax, Chapter 217; and the Natural Gas Distributors' License Tax, Chapter 218. All these Acts are grouped in the Political Code, beginning with Chapter 204 and ending with Chapter 218, and the basis for the levy in each chapter is either the amount or the production had or income enjoyed, and all are made due and collectible after such production is had or income determined, and necessarily the basis in any case must be for some prior period. The production or income, as the case may be, in the particular enterprise is the yardstick that measures the amount of the license collected.

At the 1933 session of the legislature, Chapter 166 was enacted by which a number of sections were added to the old law, amongst which was section 2303.3. That section provides: "Every corporation which shall be dissolved or cease to do business in this state during any tax paying year, shall make its return and pay the tax due, for such period as it transacted business, on or before the date of such dissolution or cessation of business. The state board of equalization may grant a reasonable extension of time for filing a return upon good cause shown therefor." Section 2303.3 was obviously enacted for the specific purpose of taking care of such a contingency as is involved in the case at bar.

There is nothing strange or confusing about the Act under consideration. It expressly takes the income of the year prior to the year the tax is collected as the basis of the tax, and its provisions are similar to all other tax laws, both in this state and others, which are grounded on income or production. It is not retroactive in any particular.

The records in the office of the State Board of Equalization of the State of Montana, of which we take judicial notice by virtue of subdivision 3 of section 10532, Revised Codes, show the facts as to the computation and collection of the license tax from the defendant corporation in such manner as amounts to a mathematical demonstration of the erroneous conclusions of the majority. Such facts are as follows:

"March 8, 1935—tax collected on 1934 net income........$1,014.00
October 27, 1937—additional tax      do............................ 367.19

Total tax collected on net income for 1934.....................$1,381.19

March 1, 1936—tax collected on 1935 net income........$ 800.59
Oct. 27, 1937—additional tax      do................................ 131.30

Total tax collected on net income for 1935......................$ 931.89

March 10, 1937—tax collected on 1936 net income........$1,155.56
June 11, 1937—additional tax collected on 1936 net
   income ............................................................................ 577.78

Total tax collected on net income for 1936.....................$1,733.34"

It is difficult to understand how anyone is unable to grasp the essential fact that the defendant corporation paid no license tax on its net income for the year 1937 which tax was due and payable when it ceased to do business in the state, or at such time thereafter as may have been fixed by the State Board of Equalization, if good cause were shown why further time should be granted, as provided by statute. The majority clearly absolves this foreign corporation from a clear obligation to the state and deprives the state of money to which it is justly entitled.

Section 2303.3 does not impose any additional tax, but in cases where a corporation ceases to do business in the state

the section merely becomes operative to bring to maturity the obligation to pay the tax for such part of the last fiscal year that the corporation carried on business in the state without deferring the date of return or date of payment which applies to those continuing in business. The necessity for such a law to meet such a contingency as exists in the case at bar is too manifest to require elucidation. A foreign corporation, such as the defendant, might cease to do business in the state, remove its assets from the state and compel the board to go into a foreign jurisdiction to collect the tax, if it were not for section 2303.3.

The judgment of the district court should be affirmed.

Rehearing denied May 16, 1942.