No. 83-551

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

TED SCHWINDEN, In his Official Capacity
as Governor of the State of Montana;
ELLEN FEAVER, In her Official Capacity
as Director of Revenue of the State of
Montana; DEPARTMENT OF REVENUE of the
State of Montana; MONTANA ASSOCIATION
OF COUNTIES; MONTANA LEAGUE OF CITIES
AND TOWNS; URBAN COALITION; and MONTANA
SCHOOL BOARDS ASSOCIATION,

                              Plaintiffs,

        -vs-

BURLINGTON NORTHERN, INC.,

                              Defendant.

---

ORIGINAL PROCEEDING:

COUNSEL OF RECORD:

    For Plaintiff:

        David W. Woodgerd argued, Dept. of Revenue, Helena,
        Montana
        G. Steven Brown, Mont. Assoc. of Counties, Helena,
        Montana
        Robert M. McCarthy, Silver Bow County Atty. for League
        of Cities & Towns, Butte, Montana
        Mike McGrath, L & C County Attorney for Urban Coalition,
        Helena, Montana
        Chip Erdmann, Montana School Boards Assoc., Helena

    For Defendant:

        Stanley T. Kaleczyc argued, Helena, Montana

    For Amicus Curiae:

        George Bennett argued for Montana Bankers, Helena,
        Montana
        William David Dexter for Multi-Tax Commission, Seattle,
        Washington

---

                    Submitted:  October 9, 1984

                    Decided:  November 23, 1984

Filed:  NOV 23 1984

                    *Ethel M. Harrison*
_____
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an original proceedings in this Court brought by Governor Ted Schwinden, Ellen Feaver, Director of the State Department of Revenue, and interested associations for a declaratory judgment determining the validity of section 15-31-116, MCA. The defendant taxpayer is Burlington Northern, Inc.

We deemed important the issue raised by the complaint for declaratory judgment because it implicated the validity of state corporation license tax statutes which allocate revenue between the state and counties. We therefore accepted jurisdiction of the cause and remanded the case to the District Court, First Judicial District, Lewis and Clark County, to determine any factual controversies involved.

The District Court scheduled hearings, determined facts under our remand, and returned its written findings of fact to this Court on May 25, 1984. Thereafter we provided time for the filing of objections by the parties, submission of briefs by the parties and amici on the issues and findings, and heard oral arguments on the cause. At the conclusion of oral argument, we asked for additional briefs from the parties on an issue raised by an amicus curiae. The cause now deemed submitted for decision, we proceed to our determination.

I.

HISTORY

Prior to 1978, Montana counties were empowered by state law to impose a property tax on bank stock shares. Because federal obligations were included in the calculation of bank

assets subject to that tax, the Montana bank shares tax was held unconstitutional and a violation of 31 U.S.C. § 742 (1976), (now 31 U.S.C. § 3124), in Montana Bankers Association v. Department of Revenue (1978), 177 Mont. 112, 580 P.2d 909.

The United States Supreme Court made a similar holding with regard to a Texas bank shares tax law in American Bank and Trust Company v. Dallas County (1983), No. 81-1717, Slip Op., ___ U.S. ___, 103 S.Ct. 3369, 77 L.Ed.2d 1072.

The bank shares tax which was held unconstitutional in Montana Bankers was clearly a property tax. The governing statutes were section 15-24-501 through -508, MCA (1978), which were codified in the special property tax applications chapter of the code. The property tax was measured as a percentage of the property owned and the revenue generated by the tax was collected and kept by the counties.

Until the Montana Bankers decision, Montana banking institutions paid a bank shares tax but no corporation license tax to the State. Although banks have been subject to the corporation license or income tax statutes since 1971, (section 15-31-101(4)), interest earned on federal obligations was excluded from taxable income under those statutes. This applied to all corporations. No corporation paid a corporation license or income tax if its expenses were greater than its income after deducting excludable federal interest income. This was true even though the corporation was profitable when federal interest income was considered. Because financial institutions held a substantial portion of their assets in federal obligations, it was inevitable that, after deducting federal interest income, they owed no corporation license tax. After Montana Bankers the banks

paid neither the bank shares tax nor a corporation license tax and the counties lost an important source of revenue.

The legislature responded to the tax revenue loss growing out of our decision in Montana Bankers by passing Ch. 634, Laws of Montana (1979). The passage of that act made savings and loans institutions subject to the corporation license tax, made interest income from Montana obligations includable in corporate taxable income by repealing the exemption for Montana interest, and allocated to the counties a portion of the corporation license tax revenue.

Subjecting savings and loan associations to the corporation license tax brought about First Federal Savings and Loan Association v. Department of Revenue (Mont. 1982), 654 P.2d 496, 39 St.Rep. 1802, cert. den. 103 S.Ct. 3128 (1983). In First Federal, the savings and loan associations, in computing their corporation license tax, deducted from gross income the interest income earned from federal obligations. The Department of Revenue, in examining their tax returns for the year involved, disallowed the deduction for interest income earned from federal obligations. One of the issues coming before this Court in that case was whether the inclusion of interest from federal obligations in income subject to the corporation license tax violated 31 U.S.C. § 742 (1976), which stated that "Except as otherwise provided by law, all . . . obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority . . ." In First Federal, this Court determined that federal obligation interest income received by the taxpayers was not includable in income for the purpose of calculating the Montana corporation license tax.

After the decision in First Federal, Montana banks and savings and loan associations paid no corporation license tax, no corporation income tax, and no property taxes on their bank shares. The legislature responded in 1983 by passing section 15-31-116, MCA, which is the center of controversy here.

Burlington Northern, Inc. is a corporation which operates a railroad and other business interests in and out of Montana. Montana imposes either a license tax or an income tax on corporations. The license tax, section 15-31-101, MCA, is imposed on every corporation for the privilege of doing business in Montana. The income tax, section 15-31-403, MCA, is a "back-up" statute to impose a tax on multi-state corporations that derive income from Montana but are not doing business here. Because of the broad definition given to "doing business" in Montana, most corporations with business connections in the state are subject to the corporation license tax. Both the corporation income and the corporation license taxes are calculated in the same manner, using the same statutes to determine the amount of the tax.

We remind the reader, though it is not an issue in this case, that Montana follows the unitary principles of state taxation where multistate corporations are involved. This method of a taxation has been approved by this Court, Ward Paper Box Co. v. Dept. of Rev. Etc. (1981), 196 Mont. 87, 638 P.2d 1053; and the United States Supreme Court in Mobile Oil Corporation v. Commissioner of Taxes of Vermont (1980), 445 U.S. 425, 436, 100 S.Ct. 1223, 1231, 63 L.Ed.2d 510, 520.

II.

IS SECTION 15-31-116, MCA VALID?

As we have said, after our decision in First Federal interest income from federal obligations was not includable in the taxable income of corporations subject to the state corporation license tax. Section 15-31-116, MCA, provides, however, that when a corporate taxpayer computes allowable deductions from gross income, those deductions are decreased by a ratio of the federal interest income to all interest income earned by the corporation. This section provides as follows:

"(1) A corporation, taxable under this part, that excludes interest from gross income which would be taxable except for federal law must adjust its allowable deductions for all taxable periods for which interest is excluded in the following manner:

"(a) the total amount of interest excluded from gross income by federal law must be determined;

"(b) the total amount of all interest income from all sources must be determined;

"(c) the ratio of excluded interest income to all interest income must be determined; and

"(d) the total deductions allowable under 15-31-114 must be reduced by an amount determined by multiplying the amount of deduction otherwise allowable by the ratio of excluded interest to all interest income; however, the product of this calculation may not exceed the amount of excluded interest income.

"(2) Allowable deductions must be reduced with respect to all corporations that exclude interest income otherwise taxable upon returns filed for all taxable periods for which such exclusion is claimed and for all taxable periods for which a claim for refund is made."

In its findings of fact, the District Court found that an algebraic formula adopted by the state department of revenue in 42.23.417 A.R.M. demonstrates how to compute the deductions disallowed on the basis of federal interest income. That formula follows:

$$\frac{\text{Exempt Interest Income}}{\text{Total Interest Income}} \quad x \quad \text{Total Deductions} = \text{Deductions Disallowed}$$

For the year 1982 (the only year which we are concerned with) BN's total interest income from all sources constituted 1.74% of its gross income; the percentage of BN's total interest income made up of federally exempt income was 20.4%. Application of the section 15-31-116, MCA formula to BN's 1982 interest and expense data produces the following result:

$$\frac{\$18,328,000}{\$89,982,000} \quad x \quad \$4,677,639,000 \ = \ \$952,765,750$$

Because, however, section 15-31-116, MCA, limits the amount of disallowed deductions to the amount of the federal interest income received, the amount of deductions actually disallowed BN in tax year 1982 is $18,328,000. The District Court found that the effect of the statutory formula, combined with the statutory limit, is to add back to BN's taxable income 100% of BN's federal interest in tax year 1982.

The Department of Revenue argues that (1) deductions allowable to compute state taxable income are a matter of legislative grace; (2) there is precedent for section 15-31-116, MCA, in the Internal Revenue Code, 26 U.S.C. 291; and, (3) the exception enacted in 31 U.S.C. § 742 (1976), (now 31 U.S.C. § 3124), shows that federal interest can be taxed in some instances.

BN responds that 31 U.S.C. § 3124 forbids circuitous as well as direct attempts to tax federal interest income, citing American Bank and Trust Company v. Dallas County (1983), No. 81-1717 Slip Op., ___ US ___, 103 S.Ct. 3369, 77 L.Ed.2d, 1072 to the effect that "Congress intended to sweep away formal distinctions and to invalidate all taxes measured

- 7 -

directly or indirectly by the value of federal obligations, except those specified in the amendment." 103 S.Ct. at 3377, 77 L.Ed.2d at 1082.

We determine that the net effect of section 15-31-116, MCA, is to add back to taxable income interest income from federal obligations for the purpose of determining state corporation license tax. This, states are not permitted to do. Under 31 U.S.C. § 3124 both federal obligations and interest therefrom are exempt from taxation by states directly or indirectly in the computation of tax, unless the tax is specifically excepted in 3124(1) or (2).

Because our holding in First Federal was that the corporation license tax was not a franchise tax, section 15-31-116, MCA, standing alone, is invalid. It directly contravenes a federal law and as such violates the supremacy clause of the federal Constitution (Art. VI, Cl. 2).

III.

OUR DECISION IN FIRST FEDERAL

The issuance of our decision in First Federal created an emergency of sorts for the counties because of the material reduction in their tax revenue because of the decision. One consequence was that the Department of Revenue petitioned the United States Supreme Court for a writ of certiorari relative to our decision, a petition which was joined in by 25 other states. Certiorari was denied by the United States Supreme Court (cert.den. 103 S.Ct. 3128 (1983)).

The legislature disagreed with our decision in First Federal and said so in its preface to the adoption of Ch. 673, Laws of Montana (1983), which became section 15-31-116, MCA. The legislature was also careful to state that the passage of the new enactment was for the purpose of

maintaining current levels of revenue to the state and local governments.

Thus, our decision today that section 15-31-116, MCA, is invalid returns the State to the position it was in prior to the enactment after _First Federal_. Banking institutions will owe no corporation license tax. The question naturally arises, were we correct in _First Federal_, the centerpiece of the problem?

We have determined to reexamine _First Federal_, though over the objection of BN that we should not consider an issue raised by an amicus curiae, the Montana Bankers Association.

A. _First Federal_ was incorrect

In _First Federal_ we held that under 31 U.S.C. § 742 (1976) corporate taxpayers filing tax returns under the Montana corporation license tax law could not be required to include in their reported income, interest earned on federal obligations during the taxable year. The operating paragraph of _First Federal_ follows:

> "The Department argued that the Montana Corporation License Tax is a franchise tax on the _privilege_ of doing business in Montana with the tax based upon or measured by the net income of the taxpayer. Hence, it was argued, that the tax is not on the property (interest income), but is on the privilege. This Court finds the argument to be unpersuasive. It is a distinction without a difference in our opinion. If the franchise tax is on the privilege and the tax is based on the net income, this Court concludes that the tax is on the privilege _and_ the net income. If the net income includes tax-exempt interest, the tax is on exempt income which is prohibited by the specific federal statutes creating the federal obligations and granting the tax exemption . . . It also appears to this Court that by the Department's including the tax-exempt interest in net income, the Department is seeking to tax indirectly what it cannot tax directly, in violation of the general rule set forth in 31 U.S.C. 742 (1976) . . ." 654 P.2d at 498.

- 9 -

It is apparent that this Court concluded that, because the corporation license tax laws of this state provided a tax that was <u>measured</u> by net income, the corporation license tax violated federal law in that regard. We now determine that we were erroneous in that conclusion and that the holding in <u>First Federal</u> should be reversed.

We base our determination on these factors: (a) the Montana corporation license tax was fashioned after the federal corporation franchise tax statutes; (b) several of our cases preceding <u>First Federal</u> had held the Montana corporation license tax to be a <u>franchise tax</u>; (c) Congress has amended 31 U.S.C. § 742 (1976) to clarify when states may tax federal obligations and interest income; (d) the United States Supreme Court has enunciated the clarifying effect of the present federal statute, 31 U.S.C. § 3124; and (e) one other court has held other acts similar to the Montana corporation license tax valid.

We want it understood that we do not reach our determination reversing <u>First Federal</u> because of the tax loss to the state and counties if we were to continue <u>First Federal</u> in effect. If we were not convinced of the error in <u>First Federal</u>, we would reluctantly but candidly advise the legislature to look to other sources of tax revenues.

By its terms, section 15-31-101, MCA, the corporation license tax statute, is a franchise tax. It provides in pertinent part:

> "(3) Every corporation . . . engaged in business in the state of Montana shall annually pay to the state treasurer as a license fee for the privilege of carrying on business in this state such percentage or percentages of its total net income for the preceding taxable year at the rate hereinafter set forth . . ."

The precursor of section 15-31-101, MCA, came before the Montana Supreme Court in Equitable Life Insurance Company v. Hart, et al. (1918), 55 Mont. 76, 173 P. 1062. Equitable maintained, among other arguments, that because it also paid a special tax for the privilege of conducting an insurance business in the state, it should not be subjected to a further corporation license tax. This Court determined that Equitable was required to pay the Montana corporation license tax even though it paid other insurance license taxes. The Court reviewed the history leading to this statute and pointed out that the Montana corporation license tax followed verbatim the corporate franchise tax in the federal Tariff Act of 1909. This Court then referred to the United States Supreme Court case of Flint v. Stone Tracy Company (1910), 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed 389.

> ". . . In the present case the tax is not payable unless there be a carrying on or doing of business in the designated capacity, and this is made the occasion for the tax, measured by the standard prescribed . . . the tax is laid upon the privileges which exist in conducting business with the advantages which inhere in the corporate capacity of those taxed, and which are not enjoyed by private firms or individuals . . . It is this distinctive privilege which is the subject of taxation . . ." 55 Mont. 76, 83, 173 P. 1062, quoting Flint in part.

In State v. J. C. McGuire Construction Company (1942), 113 Mont. 324, 328, 125 P.2d 433, 434, this Court said:

> "In all later decisions of this court wherein this tax has been under consideration or has been referred to in any way it has been spoken of as a franchise tax, or license tax, an excise upon the privilege of doing business in the state in a corporate capacity. Cottonwood Coal Company v. Junod, 73 Mont. 392, at page 398, 236 P. 1080; East Helena State Bank v. Rogers, 73 Mont. 210, at page 213, 236 P. 1090; O'Connell v. State Board of Equalization, 95 Mont. 91 at page 118, 25 P.2d 114. It has been clearly distinguished from the license fees exacted upon the grant of privilege and from taxes imposed upon income or property. With the history of judicial interpretation of the act as we

- 11 -

have it thus harmonized with other tax measures, and the administration of the law in accordance therewith, the question of the character of the tax is so well settled as to leave no room for doubt or speculation." (Emphasis added.)

In Montana Bankers Association v. Department of Revenue (1978), 177 Mont. 112, 580 P.2d 909, this Court construed the Montana bank shares tax act, a property tax, as valid only if it be interpreted to authorize a deduction for the value of federal obligations in computing the bank shares tax basis. This Court relied on the 1959 amendment to 31 U.S.C. § 742 (1976), of which more later. This holding is still effective in Montana.

The Montana corporation license tax is not to be considered a property tax. O'Connell v. State Board of Equalization (1933), 95 Mont. 91, 25 P.2d 114.

It is quite clear from our holdings prior to First Federal that the Montana corporation license tax was determined by this Court to be a franchise tax and a nonproperty tax. Therefore, our decision in First Federal needs to be reexamined in the light of the language of 31 U.S.C. § 3124 (the successor to 31 U.S.C. § 742 (1976)):

"(a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except--

"(1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and

"(2) an estate or inheritance tax."

(The language found in subdivision (1) and (2) of 31 U.S.C. § 3124(a) is in essence the language found in a 1959 amendment by the Congress to 31 U.S.C. § 742 (1976).)

- 12 -

It was the intention of Congress in § 3124 to clarify the states' right to tax federal obligations or interest income in the narrow circumstances described in § 3124. We determine that a nondiscriminatory franchise tax or other nonproperty tax instead of a franchise tax is permissible; and we determine that the Montana corporation license tax is valid as a nondiscriminatory franchise tax.

In American Bank and Trust Company v. Dallas County (1983), No. 81-1717, Slip Op., ___ U.S. ___, 103 S.Ct. 3369, 77 L.Ed.2d 1072, the United States Supreme Court had before it the validity of the Texas tax on bank shares, a property tax. The court considered the Texas tax in the light of the 1959 federal amendment which is now a part of § 3124. Because the 1959 amendment provided for specific exemptions for franchise and estate and inheritance taxes, and conspicuously omitted shares taxes from that group, the Court concluded that Congress meant to bar bank shares taxes to the extent that they consider federal obligations in the computation of a property tax. 103 S.Ct. at 3375.

The first part of § 3124(a) bars any form of taxation that would require federal obligations or the interest therefrom to be considered in computing the tax. The language of 3124(a), however, does not preclude the consideration of federal obligations or their interest income in computing a nondiscriminatory franchise tax. In American Bank and Trust Company, supra, the Supreme Court said in looking at the 1959 amendment:

> "Prior to the 1959 amendment, franchise and estate and inheritance taxes measured by the value of federal obligations, like bank shares taxes, were upheld on the theory that the tax was levied on the franchise or the transfer of the property rather than on the ownership interest in the federal securities themselves. By expressly exempting

- 13 -

franchise and estate and inheritance taxes from the amended § 3701, Congress manifested its awareness that the new language would broaden significantly the prohibition as it had been construed by the courts. <u>Congress must have believed that franchise and estate and inheritance taxes required federal obligations to 'be considered, directly or indirectly, in the computation of the tax'</u>; otherwise, the specific exemptions for these taxes would have been superfluous . . ." (Emphasis added.) 103 S.Ct. at 3375, 77 L.Ed.2d at 1079.

Thus, a nondiscriminatory franchise tax levied by a state on a corporation for the privilege of doing business in the state is valid even though, in computing the tax, interest income from federal obligations is included.

The reasoning of the United States Supreme Court in American Bank makes it clear that a state may use, directly or indirectly, the interest income on federal obligations to determine corporate nondiscriminatory franchise taxes levied by the state.

In Garfield Trust Company v. Director, Division of Taxation, a cause in the New Jersey tax court (No. CB 143A-80, decided June 19, 1984), the New Jersey court upheld the validity of a New Jersey franchise tax in light of 31 U.S.C. § 3124 and the decision in American Bank. New Jersey's corporate franchise tax is determined by the addition of prescribed percentages of net worth and net income allocable to the State of New Jersey. The plaintiff included its holdings of federal obligations and its income from those sources in computing its corporate income tax, paid the tax, and then sued for refund. The refund was denied by the New Jersey taxing authorities and the New Jersey tax court upheld the denial.

The legal theory adopted by the New Jersey tax court in reaching its decision is the same as we have expounded here. The decision was based on American Bank which makes it clear

that Congress, in 31 U.S.C. § 3124, provided a distinction between nondiscriminatory franchise taxes measured by tax exempt obligations on the one hand, and property taxes otherwise levied directly or indirectly by states on such federal items on the other.

We also determine that the Montana corporation license tax is a nondiscriminatory franchise tax. The term "nondiscriminatory" was made clear by the United States Supreme Court in Memphis Bank and Trust Company v. Garner (1983), 459 U.S. 392, 103 S.Ct. 692, 74 L.Ed.2d 562. The Court said:

> "A state tax that imposes a greater burden on holders of federal property than on holders of similar state property impermissibly discriminates against federal obligations. See, e.g., United States v. County of Fresno, supra, at 462, 50 L.Ed.2d 683, 97 S.Ct. 699 ('a state tax on those who deal with the Federal Government' is unconstitutional if the tax 'is imposed [un]equally on . . . similarly situated constitutents of the State'). Our cases establish, however, that if the 'tax remains the same whatever the character of the [property] may be, no claim can be sustained that this taxing statute discriminates against the federal obligations.' Werner Machine Company v. Director of Division of Taxation, supra, at 493-94, 76 S.Ct. 534, 100 L.Ed. 634." 459 U.S. at 397, 74 L.Ed.2d at 567.

Montana's corporation license tax does not discriminate against holders of federal obligations. It taxes the interest earned by corporate holders of state obligations. Section 15-31-115, MCA, provides:

> "Notwithstanding the provisions of any other law, the income from bonds or other obligations issued by any state or political subdivision of a state are included in gross and net income for purposes of the corporation license tax . . ."

B.    May the Court reverse First Federal, as the issue was raised by amicus curiae?

Reversal of our First Federal decision was first suggested in this cause by Montana Bankers Association,

appearing amicus curiae. It is contended therefore that the rectitude of our holding in First Federal cannot be examined in this case, as the issue was first raised by one not a party to the action.

We determine here not to follow the usual rule that issues raised by amici that are not part of the underlying action will not be considered by this Court. Compelling reasons not to follow that rule include (a) the binding effect of First Federal on state officials, (b) the validity of section 15-31-116, MCA, inherently involves the operation of the Montana corporation license tax, and (c) in original proceedings our powers are at least those of a district court under Rule 54(c), M.R.Civ.P.

First Federal, when decided by this Court, was binding on the state officials who were charged by law with the collection of the Montana corporation license tax. The state officials therefore were not in a position to relitigate the validity of the holding in First Federal. Their duty instead required them to uphold the provisions of section 15-31-116, MCA, if possible. The state officials were not in the position of the usual party who, though he is able to do so, does not raise in the district court an issue for that court's decision. When outside issues are raised in this Court by amici, we usually have in mind the fact that the district court was not given an opportunity to resolve the issues raised by amici nor is it usually consonant with sound justice to reverse the district court on issues not decided in that court.

The validity of the Montana corporation license tax, with or without section 15-31-116, MCA, is inherently involved in this cause. The principal duty of this Court in

- 16 -

this cause is to determine the effect that 31 U.S.C. § 3124 has on the Montana corporation license tax. Our decision in First Federal was the primal urge out of which came section 15-31-116, MCA. If section 15-31-116 is illegitimate, as we find it is, the bastard child has a father, First Federal. The responsibility of the paternity is intertwined here.

Finally, it must be remembered that this cause is an original proceeding in this Court and the legal issues that arise belong and pertain to this Court. We remanded this cause to the First Judicial District Court for fact-finding procedures, but reserved to ourselves the legal issues involved. In entering judgment, our powers in an original proceedings are not less than those given a district court under Rule 54(c), M.R.Civ.P. Under that rule, every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in his pleadings.

We are not barred in this case, therefore, from reversing First Federal by the rule that amici may not raise issues not raised by the parties.

IV.

APPLICATION

We therefore hold and determine that section 15-31-116, MCA, is invalid for offending federal law and the supremacy clause of the federal Constitution. This opinion shall be and constitute a declaratory judgment to that effect. We further hold and determine that our decision in First Federal Savings and Loan Association v. Department of Revenue (Mont. 1982), 654 P.2d 496, 39 St. Rep. 1802, cert. den. 103 S.Ct. 3128 (1983), be and the same is hereby reversed as to its holding that income from federal obligations may not be

considered in computing corporate taxes due under the Montana corporation license tax; we further hold and determine that the Montana corporation license tax as now provided in our statutes is a nondiscriminatory franchise tax imposed upon corporations for the privilege of doing business as corporations in this state. We order that the tax obligations of Burlington Northern, Inc. for the taxable year 1982 shall be determined under the Montana corporation license tax as interpreted by this Court in this Opinion, as well as the corporation's future Montana corporation license tax returns while said tax remains in effect. As to all other corporate taxpayers, filing under the Montana corporation license tax provisions, their returns shall be filed with taxes computed according to this Opinion for taxable years ending after the date of this Opinion and for any amendment of tax returns for earlier years. With respect to whether the Montana corporation license tax should be otherwise retroactively or prospectively applied under this Opinion, we retain jurisdiction for application to us by the Department of Revenue, or by any corporate taxpayer after proceeding before the State Tax Appeal Board, for the purpose of obtaining such further relief as may be required.

Each party shall pay its own costs.

_John C. Sheehy_
Justice

We Concur:

_____
Chief Justice

- 18 -

_John Conway Harrison_

_Daniel J. Shea_

_R. C. Faulbrandson_

_Frank B. Morrison_

_____
Justices


Mr. Justice Fred J. Weber does not participate in this case.

- 19 -

Mr. Chief Justice Frank I. Haswell, dissenting:

I respectfully dissent.

In my view, section 15-31-116, MCA, is unconstitutional on its face as it discriminates against obligations of the United States Government and therefore violates the Supremacy Clause of the United States Constitution. This Court has previously held that Montana's corporation license tax is an income tax (Security Bank & Trust Co. v. Connors et al. (1976), 170 Mont. 59, 550 P.2d 1313) and not a franchise tax (First Federal Savings and Loan Association v. Department of Revenue (Mont. 1982), 654 P.2d 496, 39 St.Rep. 1802, cert. denied 103 S.Ct. 3128). Accordingly, stocks and obligations of the United States Government are exempt from taxation under 31 U.S.C. section 3124. Under section 15-31-116, MCA, the entire federal interest exemption is added back into the tax base.

Furthermore, section 15-31-116, MCA, as applied to Burlington Northern, Inc., violates the due process clause of both the United States and Montana Constitutions because the formula used thereunder in disallowing deductions is not rationally related to its 2 percent interest income from United States Government obligations.

Finally, I would not reexamine, much less overrule, our prior decision in First Federal, supra. This issue was not raised by any party to this action. It was raised by amicus curiae Montana Bankers Association and under well settled rules of law, amici are not permitted to raise additional issues not raised by the parties to the lawsuit.

_____
Chief Justice

20