No. 80-375

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

_____

WARD PAPER BOX COMPANY, a Missouri
corp.,

Respondent and Appellant,

-vs-

DEPARTMENT OF REVENUE OF THE STATE
OF MONTANA,

Appellant and Respondent.

_____

Appeal from: District Court of the First Judicial District,
In and for the County of Lewis & Clark, The
Honorable Peter Meloy, Judge presiding.

Counsel of Record:

For Appellant:

Terry B. Cosgrove, Helena, Montana
(Special Asst. Atty. General), Argued

For Respondent:

Ward A. Shanahan; argued, Helena, Montana
Gough, Shanahan, Johnson & Waterman, Helena,
Montana

_____

Submitted: September 21, 1981

Decided: DEC 21 1981

Filed: DEC 21 1981

_Thomas J. Kearney_

_____
Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

This is an appeal by the Department of Revenue (DOR) from a judgment of the District Court of Lewis and Clark County vacating an assessment of additional corporation license taxes against the Ward Paper Box Company (Ward) for the years 1971 through 1975. We reverse.

Ward filed Montana corporation license tax returns for the years in question based on the segregated income from its Montana operations alone. DOR audited Ward's records, determined that Ward was a unitary business not entitled to separate accounting of its Montana operations and income, and assessed additional corporation license taxes against Ward by use of a three factor formula which apportioned to Montana a part of Ward's total income.

Ward protested this assessment to the State Tax Appeal Board (STAB). STAB affirmed the assessment by DOR. Ward filed a petition for review in the District Court of Lewis and Clark County. On August 4, 1980, the District Court reversed the STAB decision. DOR now appeals from the judgment of the District Court.

Ward is a Missouri corporation qualified and doing business in Montana, maintaining its principal place of business in Kansas City, Kansas. All of its common stock is owned by Mr. Louis Ward. Ward's activities consist of seven divisions; the divisions located outside of Montana are involved in manufacture, sale and distribution of paper boxes and paper box products in the states of Kansas, Missouri, Colorado, South Carolina and Virginia. The Montana divisions consist of two cattle ranches, one in Meagher County and one in Powell County.

For the years 1971 through 1975, Ward used the separate accounting method for filing its Montana tax returns and in each year paid the minimum corporation license tax of $50. During those years the operating costs and depreciation expenses of the Montana divisions exceeded the income earned by those divisions.

- 2 -

During the same time period, Ward filed tax returns under the unitary apportionment method in the other states in which it was operating and the Montana ranch divisions were included as part of its total unitary business. In those states the losses sustained by the ranch divisions were used to offset income earned by the paper box divisions.

The facts regarding Ward's operations during the years in question are for the most part uncontested. The home office in Kansas City provided administrative services for all divisions of Ward's operation which included preparing federal and state reports, hiring the accountants to prepare tax returns, keeping the books, preparing financial statements and balancing check books. Each of the divisions was charged an arbitrary figure of $60 per month for the home office services. This figure was not based on the amount of time actually spent on each division by the home office personnel.

Ward's divisions did not exchange equipment or personnel and did not purchase products jointly. There was no joint advertising program among the various divisions and no common salesmen.

There were two accounts maintained for each division, an expense bank account and a payroll account.

Each division's expense bank account was maintained in a bank in Kansas City. Any monies generated by a division were deposited in that division's separate expense account. If the division did not immediately need the funds, they would be transferred from the separate division expense account into a general account and would be utilized wherever needed by any of the separate divisions. The president of the company would make the decision as to the transfer. Excess funds would be invested, if not needed by any of the divisions. A portion of the short-term investment income was attributable to funds generated in Montana, yet the portion attributable to funds earned in Montana could not be specifically identified or segregated.

If either of the Montana ranch divisions did not generate

enough income to meet expenses, additional funds would be transferred from Ward's general account to the ranch division's expense bank account.

The payroll account for each ranch division was maintained in a Montana bank and checks could be written on the account by the ranch manager. However the home office personnel maintained the records, balanced the books, and made the deposits.

There was some central management of the corporation. From the evidence presented at the hearing, STAB found that the home office made all of the decisions regarding the financial affairs of the corporation and that major decisions regarding the ranches, such as the purchase of equipment and the buying and selling of cattle, required the approval of the chairman of the board or the president of the corporation.

Based on its findings regarding Ward's operation, STAB held that Ward was a unitary business and that the DOR had properly assessed the additional taxes against Ward. The District Court reversed the STAB decision, and DOR appeals.

Two issues are raised on appeal:

1. Whether the Montana ranch divisions were part of Ward's unitary business requiring Ward to apportion its total income for Montana corporation and license tax purposes.

2. Whether the proper standard of review was used by the District Court in reviewing the STAB decision.

In order to resolve the first issue we must look at the pertinent statutory language in effect for the years 1971 through 1975, the years for which Ward was assessed additional corporation license taxes.

In 1971 and 1972 section 84-1503, R.C.M. 1947, provided in pertinent part:

> "If the income of any corporation from sources
> within the state cannot be properly segregated
> from income without the state, then, in that
> event, the amount of the net income returned
> shall be that proportion of the taxpayer's
> total net income which the taxpayer's gross

business done in the state of Montana bears to the total gross business of the taxpayer, and apportionment shall be made under the rules and regulations prescribed by the state board of equalization, giving consideration to sales, property and payroll and such other factors as may be deemed applicable . . ."

A 1973 amendment of this section substituted the words "department of revenue" for "board of equalization."

The section was amended again in 1974 and as amended stated in part:

"A corporation engaged in a unitary business within and without Montana must apportion its business income . . . A business is unitary when the operation of the business within the state is dependent upon or contributory to the operation of the business outside the state or if the units of the business within and without the state are closely allied and not capable of separate maintenance as independent business[es]."

This same rule was found in the administrative regulations prior to the 1974 amendment of section 84-1503. The regulations which contained this rule were effective for tax years beginning on or after January 1, 1967.

In Mont. Dept. of Rev. v. Am. Smelting & Refining (1977), 173 Mont. 316, 567 P.2d 901 (hereinafter cited as ASARCO), this Court held that the purpose of the 1974 amendment was to clarify the statute; we stated that the unamended version of the statute was not in conflict with the regulations in effect prior to the 1974 amendment and we upheld the administrative regulations. Therefore, the rule quoted above applied during the entire period in dispute, first as an administrative regulation and then as a statute in which that regulation was codified.

If Ward was a unitary business, it was required to apportion its business income for the purpose of the Montana corporation license tax. If the business was unitary, the income from sources within Montana could not be "properly segregated" from income without the state.

Segregating the income by source does not necessarily "properly segregate" the Montana income from the out-of-state

income thereby making the use of the separate accounting method proper, any statement in ASARCO, supra, that might be interpreted to the contrary notwithstanding.

The United States Supreme Court has declared that a state is not precluded from taxing a corporation under the apportionment method even if the source of income may be ascertained by separate geographical accounting as long as the intra-state and extra-state activities are part of a single unitary business. Mobil Oil Corp. v. Com'r of Taxes of Vermont (1980), 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510.

If the operation of Ward's business within Montana was dependent upon or contributory to its operation outside the state or if the Montana ranch divisions and the out-of-state paper box divisions were closely allied and not capable of separate maintenance as independent businesses, then the Montana ranch divisions were part of a "unitary business."

We find from the facts of this case that Ward's operation within Montana was dependent upon and contributing to its operation outside Montana. The Montana divisions were dependent upon the out-of-state operation for central services which included the preparation of federal and state reports, the hiring of accountants to prepare tax returns, the preparation of financial statements, the keeping of records, and the balancing of check books; for financing when funds in the ranch divisions' expense bank account were insufficient to meet the divisions' expenses; and for major management decisions which included the purchase of equipment and the buying and selling of cattle.

Ward's operation within Montana also contributed to its operation and net income outside the state. The Montana divisions furnished Ward with a substantial tax write-off thereby saving the corporation as a whole a substantial amount in taxes. Also a portion of Ward's short-term investment income was attributable to funds generated in Montana.

Since Ward's operation in Montana was both dependent upon and contributory to its operation outside the state, the Montana ranch divisions were part of Ward's unitary business during the years in question.

The respondent Ward contends that the DOR's assessment of additional taxes against it in this case is an attempt to subject income earned by Ward in other states to the Montana corporation license tax in violation of the due process clause of the Fourteenth Amendment of the United States Constitution. We disagree.

The United States Supreme Court recently addressed this issue in Mobil Oil Corp., 445 U.S. at 436-437, stating:

> "It long has been established that the income of a business operating in interstate commerce is not immune from fairly apportioned state taxation. (Cite omitted.) '[T]he entire net income of a corporation, generated by interstate as well as intrastate activities, may be fairly apportioned among the States for tax purposes by formulas utilizing in-state aspects of interstate affairs.' (Cite omitted.) For a State to tax income generated in interstate commerce, the Due Process Clause of the Fourteenth Amendment imposes two requirements: a 'minimal connection' between the interstate activities and the taxing State, and a rational relationship between the income attributed to the State and the intrastate values of the enterprise. (Cite omitted.)"

The "minimal connection" or "nexus" is established "if the corporation avails itself of the 'substantial privilege of carrying on business' within the State . . ." Mobil Oil Corp., 445 U.S. at 437, citing Wisconsin v. J. C. Penny Co. (1940), 311 U.S. 435, 444-445. Ward clearly availed itself of this privilege in Montana.

The "rational relationship" requirement is met in this case also. Ward was operated as a unitary business and as discussed earlier its operation in Montana was both dependent upon and contributory to its operation outside the state. Therefore, the portion of Ward's total income attributed to Montana under Montana's three-factor apportionment formula is

- 7 -

rationally related to the intrastate value of the corporation.

The second issue raised by appellant DOR is whether the District Court used the proper standard of review of STAB's findings and ruling. Since we are reversing the District Court judgment, this issue is irrelevant to a determination of this appeal.

The judgment of the District Court is reversed and the order of the State Tax Appeal Board entered October 1, 1979 in Docket No. CT-1978-3 is reinstated.

_____
Chief Justice

We concur:

_____

_____

_____

_____
Justices

- 8 -