No. 80-375

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

RUSSELL STOVER CANDIES, INC.,

Respondent and Appellant,

-vs-

DEPARTMENT OF REVENUE OF THE STATE
OF MONTANA,

Appellant and Respondent.

---

Appeal from:   The District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Peter Meloy, Judge presiding.

Counsel of Record:

    For Appellant:

        Ward A. Shanahan; Gough, Shanahan, Johnson & Waterman,
        Helena, Montana

    For Respondent:

        Terry B. Cosgrove; Luxan & Murfitt, Helena, Montana
        Michael Rieley, Dept. of Revenue, Helena, Montana

---

                            Submitted:   March 31, 1983

                            Decided:   May 19, 1983

Filed:   **MAY 19 1983**


_Ethel M. Harrison_
_____
              Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

The Department of Revenue (DOR) appealed the Lewis and Clark County District Court judgment reversing the State Tax Appeal Board's (STAB) determination that the Montana divisions of the Ward Paper Box Co. (Ward), appellant, now Russell Stover Candies, Inc., were taxable as part of a unitary business. The District Court held that assessment of income taxes based on appropriation of income was thus improper. This Court reversed the District Court decision. Russell Stover appealed to the United States Supreme Court which vacated our judgment and remanded the case to this Court for reconsideration in light of two United States Supreme Court cases decided subsequent to our decision.

We affirm our previous decision.

The facts are well stated in our initial opinion, Ward Paper Box Co. v. DOR (1981), ____ Mont. ____, 638 P.2d 1053, 38 St.Rep. 4147. However, they will be briefly set out here.

Ward filed Montana corporation license tax returns for 1971 through 1975 based on the segregated income from its Montana operations alone. DOR audited Ward's records, determined that Ward was a unitary business not entitled to separate accounting of its Montana operations and income, and assessed additional corporation license taxes against Ward by use of a three-factor formula which apportioned to Montana part of Ward's total income.

Ward protested this assessment to STAB which affirmed the assessment by DOR. Ward filed a petition for review in the District Court of Lewis and Clark County. On August 4, 1980, the District Court reversed the STAB decision. DOR appealed to this Court from the judgment of the District

-2-

Court.

Ward was a Missouri corporation qualified and doing business in Montana, maintaining its principal place of business in Kansas City, Kansas. All of its common stock was owned by Louis Ward during the period in question. Ward's activities consisted of seven divisions; the divisions located outside Montana were involved in manufacture, sale and distribution of paper boxes and paper box products in the States of Kansas, Missouri, Colorado, South Carolina and Virginia. The Montana divisions consisted of two cattle ranches, one in Meagher County and one in Powell County.

For the years 1971 through 1975, Ward used the separate accounting method for filing its Montana tax returns and in each year paid the minimum corporation license tax of $50. During those years the operating costs and depreciation expenses of the Montana divisions exceeded the income earned by those divisions.

During the same time period, Ward filed tax returns under the unitary apportionment method in the other states in which it was operating, and the Montana ranch divisions were included as part of its total unitary business. In those states the losses sustained by the ranch divisions were used to offset income earned by the paper box divisions.

The facts regarding Ward's operations during the years in question are for the most part uncontested. The home office in Kansas City provided administrative services for all divisions of Ward's operation which included preparing federal and state reports, hiring the accountants to prepare tax returns, keeping the books, preparing financial state-

-3-

ments and balancing checkbooks. Each of the divisions was charged an arbitrary figure of $60 per month for the home office services. This figure was not based on the amount of time actually spent on each division by home office personnel.

Ward's divisions did not exchange equipment or personnel and did not purchase products jointly. There was no joint advertising program among the various divisions and no common salesmen.

There were two accounts maintained for each division, an expense bank account and a payroll account. Each division's expense bank account was maintained in a bank in Kansas City. Any monies generated by a division were deposited in that division's separate expense account. If the division did not immediately need the funds, they would be transferred from the separate division expense account into a general account and would be utilized wherever needed by any of the separate divisions. The president of the company would make the decision as to the transfer. Excess funds would be invested, if not needed by any of the divisions. A portion of the short-term investment income was attributable to funds generated in Montana, yet the portion attributable to funds earned in Montana could not be specifically identified or segregated.

If either of the Montana ranch divisions did not generate enough income to meet expenses, additional funds would be transferred from Ward's general account to the ranch division's expense bank account.

The payroll account for each ranch division was maintained in a Montana bank and checks could be written on

-4-

the account by the ranch manager. However, the home office personnel maintained the records, balanced the books and made the deposits.

There was some central management of the corporation. From the evidence presented at the hearing, STAB found that the home office made all of the decisions regarding the financial affairs of the corporation and that major decisions regarding the ranches, such as the purchase of equipment and the buying and selling of cattle, required the approval of the chairman of the board or the president of the corporation.

We reversed the decision of the District Court and held that the ranch divisions were part of Ward's unitary business.

Our decision was founded upon the statutory definition of a unitary business. Section 15-31-301(2), MCA, defines the unitary business principle. It reads:

> "(2) A corporation engaged in a unitary business within and without Montana must apportion its business income as provided for under 15-31-305. A business is unitary when the operation of the business within the state is dependent upon or contributory to the operation of the business outside the state or if the units of the business within and without the state are closely allied and not capable of separate maintenance as independent businesses."

This rule applied throughout the entire period of the dispute, first as an administrative regulation and then as the above statute in which that regulation was codified. We concluded from the facts of the case that Ward's operation within Montana was dependent upon and contributing to its operation outside Montana. Thus, taxing apportioned income of Ward's overall operation was not violative of the due

-5-

process clause.

After our decision, Russell Stover Candies, Inc., acquired all interest in Ward. It then appealed to the United States Supreme Court.

The United States Supreme Court vacated the judgment and remanded the cause to this Court for further consideration in light of two United States Supreme Court cases: F.W. Woolworth Co. v. Taxation and Revenue Dept., New Mexico (1982), 458 U.S. ___, ___ S.Ct. ___, 73 L.Ed.2d 819, 50 USLW 4457, and ASARCO, Inc. v. Idaho State Tax Commission (1982), 458 U.S. ___, ___ S.Ct. ___, 73 L.Ed.2d 787, 50 USLW 4962.

We affirm our initial decision.

In both of the above cases, taxpayer corporations were appealing state court decisions allowing revenue departments to include income earned through investment subsidiaries in the total "business income" to be apportioned for taxing purposes. The Supreme Court determined that the subsidiaries were separate and discrete businesses and income from such entities could not increase the income of the parent corporation that was to be apportioned. Taxing such income was a violation of the due process clause as no relationship exists between income produced by subsidiaries and the value of transacting business within the state. Mobil Oil Corp. v. Commissioner of Taxes (1980), 445 U.S. 425, 100 S.Ct. 1223, 63 L.Ed.2d 510; Moorman Mfg. Co. v. Bair (1978), 437 U.S. 267, 98 S.Ct. 2340, 57 L.Ed.2d 197.

In ASARCO, Idaho tried to levy corporate income taxes on the corporation based on income, increased by dividends, interest and stock sales from ASARCO's major interests in

five foreign subsidiaries. The State Supreme Court approved this practice, and ASARCO appealed to the United States Supreme Court.

The Court applied the unitary business principle, best explained in Mobil Oil, supra. It found that the subsidiaries in question were separate business entities.

ASARCO had a majority interest in Southern Peru Copper Corporation, but due to a management agreement, it could not assume control of the subsidiary. Further, Southern Peru did not seek direction from ASARCO. The majority of MIM Holdings, Ltd., in Australia was owned by ASARCO, but no control was asserted nor did it elect any board members, appoint any officers or hire any staff. In two other subsidiaries, ASARCO only held minority interests, and the court held they were autonomous operations. Finally, the Mexican subsidiary was once wholly owned by ASARCO but a Mexican law forced it to divest 51 percent of its ownership.

Idaho urged the Court to expand the unitary business principle to include any income received by a parent corporation that would add to the general capital of that corporation. The Court refused this interpretation because it would result in taxing returns on any corporate investment as "business income," even though received from a totally independent entity.

The same general question was raised in Woolworth. The taxpayer corporation owned four foreign subsidiaries. New Mexico apportioned Woolworth's income for taxing purposes and included in such income dividends paid by subsidiaries. The corporation appealed the New Mexico Supreme Court's approval of this action.

As in ASARCO, the United States Supreme Court applied the unitary business principle and found the subsidiaries to be separate business entities. It determined that the potential to control is insufficient to find a unitary business. Moreover, mere financial advantage achieved from dividends does not warrant a finding that a subsidiary is part of a unitary business.

The Court concluded that the contribution to income did not result from functional integration nor centralization of management. Functional integration was absent since the subsidiaries did all their own purchasing, staffing and training. Further, there was no centralized management. The subsidiaries had separate and distinct management personnel and training systems for such personnel. They made their own management decisions and determined their own policies. Each subsidiary catered to local needs and tastes. Each subsidiary was considered autonomous and thus a separate and discrete business.

There are certain factors that distinguish the present case from the cases decided by the United States Supreme Court. First of all, in ASARCO and Woolworth, the questioned income was derived from foreign investments in the form of subsidiaries. Here, the ranch divisions were active operations of Ward. Secondly, in form, each subsidiary is a separate and distinct business. Each had separate directors, officers and staff. On the other hand, the ranch divisions were formally part of the Ward corporation. They were subject to Ward's policies and directives and had to operate under the auspices of the board and officers. Third, and most important, there is a striking difference between

the present case and the United States Supreme Court cases regarding the independence of the business entities.

In applying the standard utilized by the Supreme Court we must affirm our initial decision. To ascertain whether the subsidiaries were part of a unitary business, the Supreme Court had to determine whether there was functional integration and centralized management in the relationship between the parent and subsidiary. In other words, the Court focused on the relative independence of the subsidiary. In the case at bar, we find that the ranch divisions had very little independence from the overall Ward operation. The ranch divisions and Ward were functionally integrated. Even though a specific product did not evolve from such integration, functional integration existed with respect to the operation of the division. There was also a large amount of centralized management. Since the ranch divisions are not separate and discrete business entities but part of a unitary business, the State was correct in taxing Ward, based on appropriation of Ward's total income.

The Montana divisions did not have the capacity to operate independent of Ward. The ranches depended upon the out-of-state operation for actual services including preparation of federal and state reports, tax returns and financial statements and hiring accountants to perform such services. The home office also kept all records and books and provided financing when funds in the ranch division expense account were insufficient. Further, the directors and officers controlled all divisions of Ward, including the ranch divisions. They approved or made all major decisions with respect to ranching activity such as buying equipment

and buying and selling cattle. If such decisions were not made, the ranches simply would stand idle.

Further, we believe that Ward admitted that the ranches were part of a unitary business by utilizing the unitary business approach when filing corporation income tax forms in the other states where it operated. It considered the ranches part of its unitary business to set off income earned in those states with losses incurred in Montana. However, to minimize tax assessment in Montana, Ward asserted that it was a separate entity.

We also conclude that the standard utilized by the United States Supreme Court to determine if the subsidiaries in question were part of a unitary business is consistent with the standard codified in section 15-31-301(2), MCA. As previously discussed, the Court focused upon the independence of the entity and whether it was capable of separate maintenance. Our statute also keys upon the dependence upon the "out of state" operation and whether the entity is capable of separate maintenance as an independent business.

Russell Stover also questions the constitutionality of the formula used to apportion to the state income to be taxed. We do not consider this issue for the following reasons. First of all, this question was not raised in the initial appeal to this Court. Second, the United States Supreme Court did not address this issue in its remand order. Finally, neither party adequately briefed this issue. In fact, the appellant mentions it for the sole purpose to insure that it is not deemed waived.

Affirmed.

_____
Chief Justice

-10-

We concur:

_John Conway Harrison_

_Daniel J. Shea_

_V. C. Gulbrandson_

_Fred J. Weber_

_John C. Sheehy_

_Frank B. Morrison_
Justices