No. 88-521

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

AMERICAN TELEPHONE & TELEGRAPH COMPANY,
a corp., AT&T TECHNOLOGIES, INC., a corp.,
and MOUNTAIN STATES TELEPHONE & TELEGRAPH
COMPANY, a corp.,
            Plaintiffs and Appellants,

        -vs-

STATE TAX APPEAL BOARD OF THE STATE OF MONTANA;
ROBERT S. RAUNDAL, MARY E. HEMPLEMAN, and DALE D.
DEAN, as members of and constitute the State Tax
Appeal Board of the State of Montana; DEPARTMENT OF
REVENUE OF THE STATE OF MONTANA; and JOHN D. LaFAVER,
in his capacity as Director of the DEPARTMENT OF
REVENUE OF THE STATE OF MONTANA,
            Defendants and Respondents.

APPEAL FROM:   District Court of the First Judicial District,
               In and for the County of Lewis & Clark,
               The Honorable Thomas Honzel, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

            Terry B. Cosgrove argued & Michael J. Rieley; Luxan
            & Murfitt, Helena, Montana
            Dennis Lopach, Mountain States Telephone & Telegraph,
            Helena, Montana

        For Respondent:

            David Woodgerd argued, Dept. of Revenue, Helena, Montana

                              Submitted: December 5, 1989

                                Decided: February 20, 1990

Filed:

_____
                    Clerk

Justice John C. Sheehy delivered the Opinion of the Court.

In this case we hold principally that where corporate taxpayers are engaged in a unitary business, sales by the corporations of temporary cash investments are not to be reported by them for Montana's corporation license tax or income tax purposes as included in gross sales; and, except for the net gain from such sales, the total amounts of such sales should be excluded from the formula determining the unitary businesses' income for Montana Corporation License Tax reporting.

The taxpayers here are American Telephone and Telegraph Company (AT&T), AT&T Technologies (Technologies), formerly known as Western Electric, and Mountain States Telephone and Telegraph Company (Mountain Bell). For the tax years involved, AT&T was the parent corporation of an affiliated group of corporations whose operations in Montana consisted of providing intrastate and interstate telecommunications and related activities. Technologies is a wholly owned subsidiary of AT&T whose operations in Montana included the sale of telecommunications equipment. Mountain Bell provided interstate and intrastate telecommunications services and related activities in Montana and neighboring states, participated in furnishing long distance interstate and international telecommunications, and, for the tax years involved was owned in excess of 50% by AT&T.

Under a past agreement with the Montana Department of Revenue, corporation license tax returns for the three companies were filed

2

on a "separate company basis." Each taxpayer filed its own separate return, separately reported its income and expenses and paid a corporation license tax based upon its separate activity. In 1984 the Montana Department of Revenue audited the taxpayers, by reviewing their records maintained in their respective corporate headquarter offices in New York, New Jersey, and Colorado. The Montana Department determined that AT&T and its subsidiaries were engaged in a unitary business. There is no dispute in this case that the corporations should be considered as a unitary business.

Montana Department of Revenue proposed a deficiency assessment on July 11, 1985. The Taxpayers protested the assessment and after an informal conference, supplied additional supporting information in a letter dated April 17, 1986. After a further conference on June 8, 1986 between representatives of the Department and the Taxpayers, the Department issued a final deficiency assessment on July 14, 1986. Taxpayers paid the tax under protest and litigation in the District Court, First Judicial District, Lewis and Clark County ensued.

The issues before the District Court were the proper computation of the sales factor denominator (hereafter explained); a proper allowance for the depreciation deduction; proper allowances for Taxpayers' contributions to its Employee Stock Ownership Plan (ESOP) and Federal Fuel Tax Payment deductions; a proper deduction for interest income on United States obligations; and the proper allocation of monies originally paid as interest owed on overdue taxes. The District Court affirmed the

3

determinations of the Department in all respects except one. The District Court allowed the Taxpayers a deduction for contributions made to its ESOP and for federal fuel tax payments, and ordered a refund related to those items. The refund was paid and the Department did not cross-appeal from the District Court order on those issues. Taxpayers appealed to this Court from the judgment of the District Court on all of the issues except the decision on ESOP contributions and federal fuel tax payments.

We determine that the District Court was correct in its determinations and therefore affirm the same.

I.

A background explanation of Montana's Corporation License Tax is necessary.

Every corporation engaged in business in the state of Montana must pay annually to the state treasurer as a license fee for the privilege of carrying on business in this state a percentage of its total net income for the preceding taxable year at the rates required under our statutes. In the case of corporations having income from business activity which is taxable both within and without this state, the license fee is measured by the net income derived from or attributable to Montana sources as determined under the Corporation License Tax Act. Section 15-31-101(3), MCA.

Montana, to overcome the difficulty, when a corporation engages in a unitary business in more than one state, of determining the corporation's income and expenses generated from its activities in Montana, has adopted the Uniform Division of

Income for Tax Purposes Act (UDITPA). Under the UDITPA method, business income is apportioned to each jurisdiction based on a three-factor apportionment formula. The factors are property, payroll, and sales. The property, payroll and sales factors are expressed as a percentage the Montana property, payroll and sales bear to the total property, payroll and sales of the business. The formula may be expressed as follows:

$$\frac{\dfrac{\text{Montana Property}}{\text{Total Property}} + \dfrac{\text{Montana Payroll}}{\text{Total Payroll}} + \dfrac{\text{Montana Sales}}{\text{Total Sales}}}{3} = \begin{array}{l}\text{Montana} \\ \text{Proportion} \\ \text{of Income \%}\end{array}$$

The business income of the corporation is multiplied by the fraction to determine the amount of income apportioned to Montana for corporation license tax purposes.

This formula may be applied to a single corporation operating a unitary business or to a group of separate corporations operating as a unitary business. When a unitary business operation is found to exist among a group of separate corporations, the factors include the total property, payroll and sales of all companies in the group. In this case the Taxpayers have stipulated that their operations for the years 1978 through 1982 constitute a unitary business and have agreed to the filing of a combined or unitary return as requested by the Department.

The statutory basis for the formula is § 15-31-305, MCA, which provides:

> Apportionment of business income. All business income shall be apportioned to this state by multiplying the income by a fraction, the numerator of which is the

property factor plus the payroll factor plus the sales factor and the denominator of which is 3.

We have interpreted the Montana Corporation License Tax and UDITPA in Montana Department of Revenue v. American Smelting and Refining Company (1977), 173 Mont. 316, 567 P.2d 901 appeal dismissed, 434 U.S. 1042 (1978); Ward Paper Box Company v. Department of Revenue (1981), 196 Mont. 87, 638 P.2d 1053, vacated and remanded, 459 U.S. 808 (1982), aff'd on remand sub nom. Russell Stover Candies v. Department of Revenue (1983), 204 Mont. 122, 665 P.2d 198, appeal dismissed, 464 U.S. 988 (1983), reh'g denied, 465 U.S. 1014 (1984); Northwest Airlines v. State Tax Appeal Board and Department of Revenue (1986), 221 Mont. 441, 720 P.2d 676.

## II.

First Issue: Did the Department of Revenue lawfully exclude gross receipts from the sale of intangible assets under the sales apportionment factor of the Taxpayers' combined unitary tax return?

This issue is narrowed to the denominator for total sales in the formula for apportionment of unitary business income.

The specific dispute over the computation of the sales factor relates to gross receipts from the Taxpayers' sale of cash management investments, referred to as temporary cash investments (TCI). TCIs represent Taxpayers' available cash which has been invested in various instruments, be they commercial paper issued by corporations, United States Treasury instruments, or other readily liquidated investments. Such instruments are bought and sold to accommodate the working capital needs of the Taxpayers.

6

Taxpayers contend that the total amount received by Taxpayers on the sale of a TCI should be included in the total sales receipts of the Taxpayers which serves as the denominator in the sales factor of the apportionment formula. The example posed by the Taxpayers is that if the Taxpayers pay $10,000 for an intangible asset such as a certificate of deposit and sell it for $11,000, the "gross receipts" from the sale is $11,000, which is includable in the sales factor. The position of the Department, on the other hand, is that with respect to the sales of intangibles, the "gross receipts" for purposes of the sales factor includes only the gain on the sale; that is, the difference between the cost of the item and the sale price, or in the example, the gain of $1,000. Taxpayers claim that the Department's position is inconsistent with usual treatment afforded to sales of tangible personal property and has no statutory support.

In examining the contentions of the parties on this issue, the District Court sided with the Taxpayers insofar as the statutory definitions are concerned. The District Court stated that business income is defined in § 15-31-302(1), MCA, as "income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations." The District Court further noted that "sales" is defined in § 15-31-302(5), MCA, as "all gross receipts." The District Court concluded that receipts from temporary cash

7

investments come within the statutory definition of sales.

The District Court nevertheless concluded that the Department has statutory authority to exclude the gross figures derived from the sale of TCIs by the Taxpayers in the pertinent parts of § 15-31-312, MCA:

> If the allocation and apportionment provisions of this part do not fairly represent the extent of the taxpayer's business activity in this state, the taxpayer may petition for or the tax administrator may require, in respect to all or any part of the taxpayer's business activity, if reasonable:
>
> . . .
>
> (2)   The exclusion of any one or more of the factors;
>
> (3)   The inclusion of one or more additional factors which will fairly represent the taxpayer's business activities in this state; or
>
> (4)   The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income.

Terming the foregoing statutory provision as a "relief provision" and that the applicable rules are §§ 42.26.261 and 42.26.263, ARM, the District Court looked at Appeals of Pacific Telephone and Telegraph Company, CCH California Tax Reports, Part 205-858, 14,907-36 through 14,907-43, an administrative decision from the California State Board of Equalization in 1978. Addressing a similar problem, the California agency stated the issue as:  "What we must decide, therefore, is whether § 25137 permits respondent to exclude the return of the capital element of the investment receipts."  The California Board held:

> In this case we think the answer to that question is clear.   The inclusion of this enormous volume of

8

investment receipts substantially overloads the sales factor in favor of New York, and thereby inadequately reflects the contributions made by all the other states, including California, which supply the markets for the communications services provided by Pacific and its affiliates. Moreover, we are unable to accept, even for a moment, the notion that more than 11 percent of the Bell System's entire unitary business activities should be attributed to any single state solely because it is the center of working capital investment activities that are clearly only an incidental part of one of America's largest, and most widespread businesses. We conclude, therefore, that UDITPA's normal provisions "do not fairly represent the extent of the taxpayer's business activity in this state," and that respondent is authorized, under § 25137 to require a deviation from the normal rules.

Another case relied on by the District Court was American Telephone and Telegraph Company v. Director, Division of Taxation, 476 A.2d 800 (N.J. Super. A.D. 1984).

But the Taxpayers object to the District Court's reliance on the relief provision to exclude gross income from TCIs from the formula. Their argument is that the Department's authority, from the testimony in the case, was based on a "practice" of the Department to exclude such sales figures as to all taxpayers. Originally, the Department official testified that the Department had a regulation to support the practice. However it appears that ARM § 42.26.263 is not by its terms applicable here, and that the Department cannot retroactively rely on its new regulation, ARM § 42.26.259(1)(a) which was promulgated by the Department after the problem in this case arose. Under ARM § 42.26.261(2), the relief section may be invoked only in specific cases of unusual fact situations which will be unique and nonrecurring. Taxpayers argue that if the Department is relying on a "practice" which is an

9

unwritten internal policy that applies to all taxpayers in all situations, it is a statement of general applicability that implements or prescribes a law or policy and thereby is a "rule." Section 2-4-102(10), MCA. Therefore Taxpayers contend that the Department should have promulgated beforehand a rule of general applicability, and since it did not, it may not rely on the "practice." In support of this contention, Taxpayers rely on Patterson v. State Department of Revenue (1976), 171 Mont. 168, 557 P.2d 798; Northwest Airlines v. State Tax Appeal Board and Department of Revenue (1986), 221 Mont. 441, 720 P.2d 676, and CBS, Inc. v. Comptroller of the Treasury, Maryland Tax Rep. (CCH) Income Tax Number 2300 A & B, § 201-305, page 12009 (Dec. 2, 1988). These cases, Taxpayers contend, require a properly adopted rule as first necessary to exclude from gross sales the receipts from sales of TCIs.

Additionally, Taxpayers contend that before the Department may apply the relief provision statute, the Department, which had the burden of proof, must first establish that the standard three-factor formula does not accurately reflect the business activity of the Taxpayers within the state. Taxpayers argue that the Department showed nothing in the administrative proceedings before the District Court of an actual distortion of Montana income because of the TCIs, and instead relied on a blanket exclusion as to all taxpayers. The Department claimed it made no difference whether the distortion was 2 percent or 20 percent, all gross proceeds from TCIS must be excluded. The United States Supreme

10

Court held in Container Corporation v. Franchise Tax Board (1983), 463 U.S. 159, 103 S.Ct. 2933, 77 L.Ed.2d 545, that under a due process challenge, a 14 percent change in taxable income was not sufficient to permit a change in the apportionment formula.

The District Court did not accept these arguments respecting the necessity of a rule before the apportionment formula could be modified. The District Court looked instead at the goals of UDITPA, and its effect on multistate taxpayers as applied by the Department in this type of case. UDITPA was drafted as a practical means of assuring that a multistate taxpayer is not taxed on more than its total net income. A basic purpose of the Uniform Act is uniformity among those states which have adopted it. Atlantic Richfield Company v. Department of Revenue (Or. 1986), 717 P.2d 613. The Oregon Supreme Court stated in an earlier case that there are two basic goals in UDIPTA:

> (1) Fair apportionment of income among the taxing jurisdictions; and (2) uniformity of application of the statutes.

Twentieth Century-Fox v. Department of Revenue (Or. 1985), 700 P.2d 1035, 1039.

Two representatives of the Department testified that the universally accepted interpretation of tax administrators in UDITPA states is not to include gross receipts from sales of temporary cash investments in the sales factor. Otherwise, a substantial distortion of the Taxpayer's business activity in the state would result.

Thus the District Court had testimonial support for its

11

determination that the position of the Department was founded on statutory authority. Under § 15-31-312, MCA, if the allocation and apportionment provisions (the formula) do not fairly represent the extent of the taxpayer's business activity in the state, the tax administrator is authorized to require, if reasonable, "the employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income." While the Department is authorized and directed to prescribe regulations to carry out the purposes of § 15-31-312, MCA, and other parts of the Act (see § 15-31-313, MCA), still the statutory goal that the tax administrator interpret the Act so as to achieve equitable apportionment of the taxpayer's income generated in the state has been attained in this case. The Taxpayers here are not being treated differently from other taxpayers in similar situations. The repeated investment short term by the Taxpayers in New York of cash monies, which if not invested would be merely cash on hand or cash in till, skews the strict application of the formula, because the gross receipts must be allocated to New York. That interpretation would not truly reflect the income generated by the Taxpayers in doing business in Montana. Strict adherence to the UDITPA formula alone does not result in allocation to Montana a fair portion of the Taxpayers' income generated by doing business in this state. Therefore the relief statute comes into play and was properly applied by the Department of Revenue. Accordingly, we uphold the District Court which in turn upheld the position of the Department of Revenue on this issue.

III.

Taxpayers state the next issue in this manner:

Is the Taxpayer entitled to claim the amount of depreciation expense for Montana State Tax purposes that is statutorily allowable under the Internal Revenue Code or is it limited to the amount that was claimed on its federal tax return?

It appears that for 1954 and subsequent years, at the urging of the Federal Communications Commission, AT&T and the Internal Revenue Service entered into a closing agreement under which inter-company profits were eliminated from the regulated telephone company's consolidated accounts for federal income tax purposes. Under the provision of the closing agreement, AT&T did not claim on its federal returns the full amount of depreciation it could otherwise have claimed under the Internal Revenue Code.

In Montana, for the years from 1967 to 1978, Taxpayers were filing on a separate company basis, and each Taxpayer was reporting its full gain from the sale of an asset and deducting depreciation in the full allowable amount for the asset. As a result, Western Electric paid a tax to Montana on the actual profit it made from selling an asset to Mountain Bell and AT&T. Mountain Bell and AT&T took a deduction on separate Montana returns for the full amount paid for such assets in conformance with § 167 of the Federal Internal Revenue Code, but different from the deduction taken on the AT&T consolidated federal return which was in compliance with the closing agreement. When the Montana Department required Mountain Bell and the other Taxpayers to make a combined state filing, the depreciation claimed by Taxpayers was not the same as

13

if they had filed separate returns. Deductions in the federal consolidated tax return were computed in accordance with the closing agreement and not § 167 of the Federal Internal Revenue Code. Taxpayers contend that the Montana Department's mandated requirement of a unitary business report denied the Taxpayers the ability to fully depreciate their assets as § 167 allowed.

The Montana Department took the position that Taxpayers were limited to the depreciation deduction reported on line 20 of their federal income tax return, and not such other deductions as § 167 of the Internal Revenue Code may permit. Taxpayers contend that § 15-31-114(2)(a), MCA, incorporates the Federal Internal Revenue Code § 167 into Montana law, and thereby allows a taxpayer to take all the deductions allowed pursuant to § 167.

Taxpayers further point out that the District Court placed great weight on the fact that the Taxpayers requested the federal closing agreement. They also contend that the District Court confused, or appeared to confuse, the closing agreement with an "election" authorized under various provisions of the Federal Internal Revenue Code and that a closing agreement is not such an election.

The Taxpayers also contend that the applicable regulation promulgated by the Montana Department in effect during the taxable years involved here was ARM § 42.23.212(1) which established the basis for determining gain or loss as the "basis prescribed by the Internal Revenue Code," and that again, the Department, after this case was submitted, promulgated a proposal to amend § 42.23.404,

14

ARM, to provide that depreciation shall be the same as "reported for federal income tax purposes."

Additionally, Taxpayers rely on Baker Bancorportion v. Department of Revenue (1983), 202 Mont. 94, 657 P.2d 89. That case confirms that a taxpayer is allowed all federal deductions unless the Montana legislature provided otherwise.

The statute which is applicable is § 15-31-114(2)(a), MCA, which allows corporations the following deductions in computing net business income:

. . .

> (2)(a) All losses actually sustained and charged off within the year and not compensated by insurance or otherwise, including a reasonable allowance for the wear and tear and obsolescence of property used in the trade or business, such allowance to be determined according to the provisions of § 167 of the Internal Revenue Code in effect with respect to the taxable year. _All elections for depreciation shall be the same as the elections made for federal income tax purposes_. No deduction shall be allowed for any amount paid out for any buildings, permanent improvements, or betterments made to increase the value of any property or estate, and no deductions shall be made for any amount of expense of restoring property or making good the exhaustion thereof for which an allowance is or has been made. (Emphasis supplied.)

The District Court determined that the underlined language in the above statute sets forth a clear legislative intent that a corporate taxpayer is required to report the same amount of depreciation on its state return as it did on its federal return.

The Department concedes that a closing agreement is not an "election" as that term is used in the Federal Revenue Codes. This is not conclusive of the issue, however. The clear intent of § 15-

15

31-114(2)(a), MCA, is that there should be uniformity in the depreciation amounts claimed for federal income tax purposes and for state corporation license tax purposes. We hold that the statute requires that the same figures be used for depreciation on the state corporation license tax returns as on the federal income tax returns and so uphold the District Court.

IV.

Should the Department limit interest expense to the extent that federal interest income is excluded in the state returns for 1979 thru 1982?

Prior to 1982, corporations filing Montana corporation license tax returns included in their net income, interest income from federal obligations.

In 1982, this Court in First Federal Savings and Loan Association v. Department of Revenue (1982), 200 Mont. 358, 654 P.2d 496, cert den. 462 U.S. 1144, 103 S.Ct. 3128, 77 L.Ed.2d 1378 (1983), held that federal interest income received by corporate taxpayers was not includable in the net income for purposes of calculating the Montana tax. Taxpayers state that in conformance with the First Federal decision, the Taxpayers excluded federal interest income from their Montana corporation license tax returns.

The legislature responded to the First Federal decision by enacting § 15-31-116, MCA (1983), which provided an equal reduction of allowed interest expense for corporations which excluded federal interest income. To implement § 15-31-116, MCA, the Department promulgated two rules, §§ 42.23.416 and 42.23.417, ARM.

16

On November 23, 1984, this Court reversed the First Federal decision in Schwinden v. Burlington Northern (1984), 213 Mont. 382, 691 P.2d 1351. As part of that decision, this Court determined that § 15-31-116, MCA, was unconstitutional. The Court then went on to discuss the application of the Schwinden case regarding Montana corporation license tax filings before or after the issuance of that opinion:

> We order that the tax obligations of Burlington Northern, Inc. for the taxable year 1982 shall be determined under the Montana corporation license tax as interpreted by this Court in this Opinion, as well as the corporation's future Montana corporation license tax returns while said tax remains in effect. As to all other corporate taxpayers, filing under the Montana corporation license tax provisions, their returns shall be filed with taxes computed according to this Opinion for taxable years ending after the date of this Opinion and for any amendment of tax returns for earlier years . . ..

Schwinden, 691 P.2d at 1359.

After the Schwinden decision, the Department promulgated amendments to §§ 42.23.416 and 42.23.417, ARM and also adopted a new rule, § 42.23.111, ARM. This last rule required that corporate filings before the issuance of the Schwinden decision, which had excluded federal interest income pursuant to First Federal must still reflect reduced reductions for interest expense as provided in the statute declared unconstitutional, § 15-31-116, MCA.

In a later case (unpublished), this Court in Cause No. 86-490, entitled Ted Schwinden, Governor of the State of Montana, Ellen Feaver, Director of Revenue of the State of Montana, Montana Association of Counties, Montana League of Cities and Towns, Urban Coalition and Montana School Board Association, as plaintiffs vs.

17

Burlington Northern, Inc., defendant, at the behest of Daniels County, referred to the foregoing language in Schwinden with respect to the prospective or retroactive effect of that case as follows:

> As a matter of interpretation of our decision in Schwinden, the critical factor as to whether income from federal obligations should be taxed for corporate license tax purposes under our decision in Schwinden, or under our decision in First Federal is the date of filing the corporate tax return by the taxpayer. Returns or amended returns filed before November 23, 1984 are entitled to compute their corporate license taxes in accordance with the decision of First Federal. Returns or amended returns filed after November 23, 1984, are to have corporate license taxes computed according to Schwinden.

Daniels County case at 5.

Taxpayers now contend that with respect to their returns filed prior to the Schwinden decision, November 23, 1984, it is improper for the Department, under § 15-31-116, MCA, to offset the interest expense sustained during the taxable year by the Taxpayers to the amount of federal obligations income which is deducted from the Montana returns. They further contend that the application of the regulations in the ARM are now founded upon a statute, § 15-31-116, MCA, which has been held unconstitutional, and so should have no effect as to the computation of their corporate license taxes in those applicable years. [Section 15-31-116 has since been repealed. § 1, Ch. 125, Laws of Montana (1989)].

There is possible merit in the contention of the Taxpayers that the Department is applying regulations founded on an unconstitutional statute which would be therefore improper. However, the language of Schwinden applies here and the computation

18

of the corporate license taxes for the Taxpayers for the years prior to <u>Schwinden</u> is controlled by the language of the <u>Schwinden</u> case. The tax returns which the Taxpayers had filed before <u>Schwinden</u> were for the single entities here involved and not for the unitary or combined business. The result of the audit of the years here in question is that the Taxpayers should have filed a unitary return before <u>Schwinden</u> showing the combined results of the corporate entities. Thus, the computation of license taxes for the years involved is being modified substantially because the results are taken from a unified business now instead of from each of the separate corporations that made the initial returns. A complete amendment of the earlier filed returns has occurred, and that amendment has taken place after November 23, 1984. Therefore, under <u>Schwinden</u>, the taxes owing shall be computed as an "amendment of tax returns for the earlier years." On this basis we again uphold the determination of the District Court.

## V.

Does Montana allow the Department to reclassify interest payments as tax payments?

Because AT&T obtained extensions prior to filing its original tax returns for the years involved here, it was required to pay interest on overdue taxes pursuant to § 15-31-502, MCA. Under the statute, interest was added at the statutory rate from the date due until paid.

Under § 15-31-503(2), MCA, interest on a deficiency assessment is computed pursuant to § 15-31-502.

19

Taxpayers argue that all of the interest paid when filing the original returns must now be reclassified as taxes paid. The Taxpayers want the interest payment credited against the tax due under the Department's deficiency assessment of additional corporate license taxes. The District Court concluded that the statutes relating to interest were clear and that the Taxpayers could not obtain a credit against the tax deficiency for the interest previously paid.

The interest which the Taxpayers originally paid for the single entity returns was computed on the amount of taxes then due but which were not paid within the statutory period. The Department is mandated under the provisions of § 15-31-502, and § 15-31-503, MCA, to collect interest on the deficiency assessment amounts at the statutory rate from the date due until paid. The Department is not empowered under the statutes to reclassify interest paid as tax paid nor is it authorized to apply the amount of interest paid as a credit against a deficiency assessment.

It is the contention of the Taxpayers that because the sections are unclear as to whether the Department has the power to reclassify such interest payments and consider them as credits against the taxes, that the statutes must be construed against the taxing authority and for the Taxpayers. The contention that the statutes are unclear is based upon the Taxpayers' argument that the statutes do not prohibit the Department from classifying the initial payment of interest as tax.

We regard the statutes as affirmatively requiring the

20

Department to collect interest on overdue taxes when paid, and also on deficiency assessments when determined.

The District Court reasoned that § 15-31-502 and § 15-31-503, MCA, required interest payments to be treated as the Department applied them and we uphold the decision of the District Court.

## VI.

The judgment of the District Court on all issues upon which an appeal is taken in this case is affirmed.

_John C. Sheehy_
_____
Justice

We Concur:

_J. A. Turnage_
_____
Chief Justice

_John Conway Harrison_
_____

_William E. Hunt_
_____

_R. C. McDonough_
_____

_Diane G. Barz_
_____

_____
Justices

21