NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-1861                                          Appeals Court

NATIONAL GRID USA SERVICE COMPANY, INC.  vs.  COMMISSIONER OF
REVENUE.


No. 14-P-1861.

Suffolk.     December 11, 2015. - June 8, 2016.

Present:  Cypher, Carhart, & Blake, JJ.


Taxation, Abatement, Corporate excise.  Public Utilities.



Appeal from a decision of the Appellate Tax Board.


John S. Brown (Donald-Bruce Abrams with him) for the
taxpayer.
Brett M. Goldberg for Commissioner of Revenue.


CYPHER, J.  National Grid USA Service Company, Inc. (NGUSA)

appeals from a decision of the Appellate Tax Board (board)

denying its motion for summary judgment and allowing a motion to

dismiss brought by the Commissioner of Revenue (commissioner)

concerning the effect of a closing agreement between National

Grid Holdings, Inc. (NGHI)[1] and the Internal Revenue Service (IRS) on interest deductions under G. L. c. 63, § 30(4). The board rejected National Grid's position that the closing agreement, which allowed a Federal deduction for a portion of the disputed interest payments, is binding on deductions allowed for State tax purpose.

Background. For background we refer to our decision in National Grid Holdings, Inc. v. Commissioner of Rev., 89 Mass. App. Ct.    (2016) (National Grid Holdings, Inc.). Briefly, that case dealt with the question whether certain deferred subscription arrangements (DSAs), among various entities related to National Grid plc, the parent company located in the United Kingdom, constituted true indebtedness, whereby payments made pursuant to the DSAs could be deducted as interest in calculating Massachusetts corporate excise tax. The commissioner disallowed the deductions for the 2002 tax year and National Grid appealed to the board. This separate action arose when the board, in hearing the first appeal, declined to admit the closing agreement in evidence.

Relevant here, we add the following undisputed facts from the board's September 19, 2014, findings of fact and report.

---

[1] NGUSA is the principal reporting corporation for a Massachusetts combined group of affiliated entities. In this appeal, we refer to NGUSA and/or NGHI as National Grid.

National Grid's tax returns for the 2002 tax year were audited by both the commissioner and the IRS. On May 1, 2007, National Grid entered into a closing agreement with the IRS, pursuant to 26 U.S.C. § 7121 of the Internal Revenue Code (code), in connection with National Grid's Federal tax return.[2] As part of that agreement, the IRS allowed a Federal deduction for a portion of the amount claimed by National Grid as interest on the DSAs.

As to National Grid's 2002 Massachusetts tax return, the commissioner determined that the DSAs were not indebtedness and that payments made in connection therewith were not interest. The commissioner issued an assessment, and on April 26, 2007, National Grid filed a CA-6, application for abatement/amended return (form CA-6), which the commissioner then denied. National Grid appealed to the board, which ruled in the commissioner's favor. National Grid appealed to this court, in National Grid Holdings, Inc., supra.

This case comes before us as a separate appeal because three months after filing its original form CA-6, National Grid filed a second form CA-6 on July 27, 2007, to report the Federal changes that resulted from the closing agreement. The second

---

[2] Section 7121(a) authorizes the IRS "to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period."

form CA-6 indicated that the corrected amount of tax due, based on the Federal change, was the same as the original amount of the tax due on its return, and that the net change to the tax was zero. National Grid did not indicate at that time that it was seeking an abatement based on the Federal changes.

The commissioner did not act on the second form CA-6. Subsequently, at the hearing before the board in the first appeal, National Grid sought to introduce the closing agreement in evidence, and was denied. Approximately a month later, on March 14, 2012, National Grid withdrew its consent to the commissioner's failure to act on the second form CA-6 and filed an appeal with the board. The commissioner moved to dismiss and National Grid moved for summary judgment. The board ruled that the closing agreement did not entitle National Grid to an abatement, and National Grid followed with this appeal.

Discussion. We are asked to decide whether the closing agreement between National Grid and the IRS is binding on the commissioner as to the deductions permitted for National Grid's Massachusetts corporate excise. The Massachusetts corporate excise statute refers to the code in providing for deductions that may be taken in calculating net income. General laws c. 63, § 30(4), as amended through St. 2003, c. 143, § 5, defines net income, in relevant part, as "gross income less the deductions, but not credits, allowable under the provisions of

the Federal Internal Revenue Code."  The code, in turn, allows a deduction for "all interest paid or accrued within the taxable year on indebtedness."  26 U.S.C. § 163(a).  National Grid maintains that the IRS's allowance of a portion of the DSA payments as deductions in the closing agreement constitutes the allowance of the deductions as interest under the code for purposes of § 30(4) such that those payments should be deductible, as interest on indebtedness, in calculating National Grid's Massachusetts excise.

The board determined that the IRS's allowance of a portion of the disputed interest deductions, as part of the closing agreement, did not dictate the commissioner's treatment of the interest payments for State tax purposes.  Because Massachusetts deductions are determined by reference to those that are "allowable under the provisions of the Federal Internal Revenue Code," the board reasoned that by permitting only some of the claimed Federal interest deductions for the DSA payments, and not all, the closing agreement did not establish that the DSA payments qualified as interest.  We agree.

The undisputed fact that only a portion of the interest deductions was allowed by the IRS cuts against National Grid's position.  National Grid provided no proof that the claimed interest payments under the DSAs were anything but homogenous or that there was a factual basis to distinguish among them for

Federal tax purposes.  A deduction for the DSA payments cannot be deemed allowable under the code if some of those payments actually were allowed as deductions by the IRS while others were not.  As the board aptly observed, "either all of the payments are interest or none is."

Section 30(4) specifically identifies those deductions that are allowable under the provisions of the code, and not what actually is allowed by the IRS pursuant to an agreement with an individual taxpayer.  The distinction between allowable and allowed is not a minor one, as National Grid insists.  The commissioner directs us to authority from other jurisdictions on this point, which we find persuasive.

In Flood v. United States, 33 F.3d 1174, 1177 (9th Cir. 1994), the term "allowable as a deduction" was described as a "term of art" in the tax field, citing Lenz v. Commissioner of Rev., 101 T.C. 260, 265 (U.S.T.C. 1993).  In Lenz, supra, the United States Tax Court stated that an "'[a]llowable deduction' generally refers to a deduction which qualifies under a specific [c]ode provision whereas 'allowed deduction,' on the other hand, refers to a deduction granted by the Internal Revenue Service." "A deduction is 'allowable' if it is permitted and not otherwise forbidden or limited by the [code], whether or not [the deduction is] actually used."  Flood, supra, quoting from Sharp v. United States, 14 F.3d 583, 588 (1993).  Similarly, in Force

v. Department of Rev., 350 Or. 179, 184 (2011), the Oregon Supreme Court highlighted the significance of the State death tax credit that was "allowable" under the [code], and "not any credit that was actually allowed." See Day v. Heckler, 735 F.2d 779, 784 (4th Cir. 1984) ("The distinction between an 'allowable' deduction and an 'allowed' deduction is not insignificant"); Sharp, supra (distinguishing between deductions that are "allowable" under the Code and those that actually are taken).

National Grid relies on two out-of-State cases as well, but both deal with State statutes providing for State taxes "as determined" or "to be determined" under the code. We note at the outset that the plain meaning of "determined" is not synonymous with "allowable." While "allowable" is defined as permissible, "determined" means to settle a question or controversy, or to come to a decision concerning, as the result of investigation or reasoning. Webster's Third New International Dictionary (1993). Indeed, in Comptroller of the Treasury v. Colonial Farm Credit, ACA, 918 A.2d 514, 518-519 (Md. Ct. Spec. App. 2007), upon which National Grid relies, a closing agreement between a farm credit association and the IRS reflected a judicial determination, in a similar case, that a portion of the taxpayer's lending activities should maintain the same tax exempt status enjoyed prior to its merger with an

entity that was not tax-exempt.  Thus the closing agreement was held binding for State tax purposes because it determined how the association's taxable income would be treated under the code, consistent with the State statute providing for State taxes "as determined" under the code.

A second case, American Tel. & Tel. Co. v. State Tax Appeal Bd., 241 Mont. 440, (Mont. 1990), involved a depreciation deduction allowed under a closing agreement that was less than the deductions allowable under the code.  The taxpayer argued that, for State tax purposes, it was entitled to the full extent of deductions allowable under the code, as the State statute provided that the allowance for wear and tear was "to be determined" according to the code.  Id. at 450-451.  However, the court held that the amounts claimed for State tax purposes should be the same as those claimed on the taxpayer's Federal tax return, which were determined by the closing agreement with the IRS.  Significantly, however, the court relied on additional statutory language that "[a]ll elections for depreciation shall be the same as the elections made for [F]ederal income tax purposes."  Id. at 451.  The relevant statutory language in that case is markedly different from G. L. c. 63, § 30(4), and does not bear on the effect of the closing agreement here.  See Rohrbough, Inc. v. Commissioner of Rev., 385 Mass. 830, 832 (1982) ("The reference is to the provisions of the Internal

Revenue Code and not simply to the amount of gross income shown on a taxpayer's Federal income tax return for the same year").

National Grid also relies on the board's findings of fact and report in PMAG, Inc. v. Commissioner of Rev., 23 Mass. App. Tax Bd. Rep. 163, 164-165 (1998), as support for its position that the board should give effect to the deductions allowed in the closing agreement. But in that case, the commissioner specifically stipulated that, for Federal tax purposes, PMAG's closing agreement with the IRS resulted in an increase in its Federal taxable income pursuant to the provisions of the code. Here, by contrast, the commissioner never stipulated to the effect of the closing agreement between National Grid and the IRS, and the commissioner specifically disputes that the closing agreement constitutes a resolution of National Grid's allowable deductions under the provisions of the code. Moreover, as the Supreme Judicial Court observed in reviewing the case, "[a] change in Federal taxable income does not automatically result in a change in Massachusetts net income," and that the commissioner engages in an independent review when there is a Federal change. PMAG, Inc. v. Commissioner of Rev., 429 Mass. 35, 39 (1999).

Conclusion. We conclude that the interest deduction provided in the closing agreement between National Grid and the IRS did not constitute a binding determination of the interest

deductions allowable for Massachusetts corporate excise purposes.  The board correctly ruled that the issue raised by National Grid's second application for an abatement regarding the interest payments under the DSAs was resolved by the board's decision in the original abatement proceedings.  Accordingly, we affirm the board's decision in dismissing the appeal.

<u>So ordered</u>.